UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ORANGE TRANSPORTATION SERVICES, INC.,

                    Plaintiff,

                                                    Civil Action No. 6:19-cv-06289-FPG

        vs.

VOLVO GROUP NORTH AMERICA, LLC,

                    Defendant.

# DEFENDANT'S MEMORANDUM OF LAW
# IN SUPPORT OF ITS MOTION TO DISMISS

**WARD GREENBERG HELLER &
REIDY LLP**
1800 Bausch & Lomb Place
Rochester, New York 14604

**KILPATRICK TOWNSEND &
STOCKTON LLP**
1001 West Fourth Street
Winston-Salem, North Carolina 27101

*Attorneys for Defendant Volvo Group North
America, LLC*

### TABLE OF CONTENTS

NATURE OF THE MATTER BEFORE THE COURT ...................................................1

STATEMENT OF FACTS ........................................................................................2

ARGUMENT ..........................................................................................................4

I.    PLAINTIFF LACKS STANDING TO ASSERT CLAIMS AS TO ALL BUT SIX
      OF THE TRUCKS AT ISSUE. ...........................................................................4

      A.    Legal Standard ....................................................................................4

      B.    Plaintiff Lacks Standing to Assert Claims as to All But Six of the Trucks
            in Question. .........................................................................................4

II.   EACH OF PLAINTIFF'S CLAIMS ARE SUBJECT TO DISMISSAL UNDER
      RULE 12(b)(6). ...............................................................................................5

      A.    Legal Standards Under Rule 12(b)(6). ..................................................5

      B.    Plaintiff Fails to State a Claim for Breach of Express Warranty. ...........6

      C.    Plaintiff's Claim for Breach of the Implied Warranty of Merchantability
            Fails Because It Was Effectively Disclaimed and Is Otherwise Barred by
            the Applicable Statute of Limitations. ..................................................8

            1.    The Engine Warranty Effectively Disclaimed the Implied
                  Warranty of Merchantability. .....................................................8

            2.    The Disclaimer Is Not Unconscionable or Otherwise
                  Unenforceable. ..........................................................................9

            3.    Plaintiff's Implied Warranty Claim is Barred by the Statute of
                  Limitations. .............................................................................11

      D.    Plaintiff Fails to Satisfy the Heightened Pleading Requirement of Rule
            9(b) and Fails to Adequately Allege All of the Elements of a Claim for
            Fraud. ...............................................................................................14

            1.    Plaintiff Has Failed to Satisfy the Heightened Pleading Standard
                  for Fraud. ...............................................................................14

                  a.    Plaintiff Fails to Allege Sufficient Detail as to Volvo's
                        Alleged Misrepresentations under Rule 9(b). ...............15

                  b.    Plaintiff Fails to Allege Facts Raising a Strong Inference of
                        Fraudulent Intent in Support of Its Fraudulent Omission or
                        Concealment Claim. ...................................................16

2.      Plaintiff Fails to Adequately Allege Volvo's Knowledge of the Defect at the Time the Alleged Statements or Omissions Were Made. ......................................................................................................17

E.      Plaintiff's Claim for Breach of the Implied Duty of Good Faith and Fair Dealing Fails Because It Is Duplicative of Plaintiff's Express Warranty Claim. ...............................................................................................................20

F.      Plaintiff's GBL § 349 Claim Fails Because It Is Barred by the Statute of Limitations and Does Not Allege Consumer-Oriented Conduct. .........................20

1.      Plaintiff's Claim for Violation of GBL § 349 Is Barred by the Three-Year Statute of Limitations. ............................................................21

2.      Plaintiff Fails to Allege Consumer Oriented Conduct that Is Within the Ambit of GBL § 349. ...........................................................................22

CONCLUSION ...............................................................................................................................24

## TABLE OF AUTHORITIES

### Cases

*Abbas v. Dixon*,
   480 F.3d 636 (2d Cir. 2007) ....................................................................................... 12

*Abraham v. Volkswagen of Am., Inc.*,
   795 F.2d 23, 250 (2d Cir. 1986) ................................................................................. 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ....................................................................................................... 5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................................... 5

*Brainard v. Freightliner Corp.*,
   No. 02-CV-0317E(F), 2002 WL 31207467 (W.D.N.Y. Oct. 1, 2002) ...................... 12

*Bristol Vill., Inc. v. Louisiana-Pac. Corp.*,
   170 F. Supp. 3d 488 (W.D.N.Y. 2016) ............................................................... *passim*

*Catalano v. BMW of N. Am., LLC*,
   167 F. Supp. 3d 540 (S.D.N.Y. 2016) ............................................................... *passim*

*Chiarelli v. Nissan N. Am., Inc.*,
   No. 14-CV-4327 (NGG)(VVP), 2015 WL 5686507 (E.D.N.Y. Sept. 25, 2015) ...... 7

*Cruz v. NYNEX Info. Res.*,
   263 A.D.2d 285 (N.Y. Sup. Ct. 2000) ................................................................. 22, 23

*Dimich v. Med-Pro, Inc.*,
   34 A.D.3d 329 (1st Dept. 2006) ................................................................................... 5

*DiMuro v. Clinique Labs., LLC*,
   572 F. App'x 27 (2d Cir. 2014) ................................................................................. 14

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*,
   375 F.3d 168 (2d Cir. 2004) ................................................................................. 15, 16

*Feliciano v. Gen. Motors LLC*,
   No. 14 CIV. 06374 (AT), 2016 WL 9344120 (S.D.N.Y. Mar. 31, 2016) ................ 13

*First Solar, Inc. v. Absolute Process Instruments, Inc.*,
   No. 17-CV-8518 (JSR), 2018 WL 1166632 (S.D.N.Y. Feb. 8, 2018) ..................... 20

*Four Seasons Solar Prod. Corp. v. Southwall Techs., Inc.*,
   100 F. App'x 12 (2d Cir. 2004) ................................................................................. 12

*Garcia v. Chrysler Grp., LLC*,
   127 F. Supp. 3d 212 (S.D.N.Y. 2015) ................................................................. 7, 8

*Haag v. Hyundai Motor Am.*,
   294 F. Supp. 3d 102 (W.D.N.Y. 2018) ..................................................................... 7

*Harris v. Mills*,
   572 F.3d 66 (2d Cir. 2009) ....................................................................................... 5

*ICD Holdings S.A. v. Frankel*,
   976 F. Supp. 234, 243-44 (S.D.N.Y. 1997) ........................................................... 20

*In re: Gen. Motors LLC Ignition Switch Litig.*,
   Nos. 14-MD-2543 (JMF), 14-MC-2543 (JMF), 2016 WL 3920353 (S.D.N.Y. July
   15, 2016) ................................................................................................................. 15

*Koch v. Christie's Int'l PLC*,
   699 F.3d 141 (2d Cir. 2012) ................................................................................... 12

*Kraft v. Staten Island Boat Sales, Inc.*,
   715 F. Supp. 2d 464 (S.D.N.Y. 2010) ................................................................. 8, 9

*Lama Holding Co. v. Smith Barney, Inc.*,
   88 N.Y.2d 413 (1996) ............................................................................................. 17

*M.E.S., Inc. v. Snell*,
   712 F.3d 666 (2d Cir. 2013) ..................................................................................... 4

*Mahon v. Ticor Title Ins. Co.*,
   683 F.3d 59 (2d Cir. 2012) ....................................................................................... 4

*Marshall v. Hyundai Motor Am.*,
   51 F. Supp. 3d 451 (S.D.N.Y. 2014) ......................................................... 8, 12, 21

*McCarthy v. Olin Corp.*,
   119 F.3d 148 (2d Cir. 1997) ..................................................................................... 6

*Mid Island LP v. Hess Corp.*,
   No. 658911/2013, 2013 WL 6421281 (Sup. Ct. New York County Dec. 2, 2013)................. 23

*Miller v. Hyundai Motor Am.*,
   No. 15-CV-4722 (TPG), 2017 WL 4382339 (S.D.N.Y. Sept. 29, 2017) ................. 6

*Mills v. Polar Molecular Corp.*,
   12 F.3d 1170 (2d Cir. 1993) ................................................................................... 14

*Nicosia v. Amazon.com, Inc.*,
   834 F.3d 220 (2d Cir. 2016) ............................................................................. 2, 4, 5

*Orlando v. Novurania of Am., Inc.*,
   162 F. Supp. 2d 220 (S.D.N.Y. 2001) .................................................................. 11

*Scarola v. Verizon Commc'ns, Inc.*,
   146 A.D.3d 692 (1st Dept. 2017)........................................................................ 23

*Shema Kolainu-Hear Our Voices v. ProviderSoft, LLC*,
   832 F. Supp. 2d 194 (E.D.N.Y. 2010) ........................................................ 10, 22, 23

*Spencer v. Ariz. Premium Fin. Co.*, No.
   06-CV-160S, 2011 WL 4473178 (W.D.N.Y. Sept. 26, 2011).................................... 22, 23, 24

*Statler v. Dell, Inc.*,
   841 F. Supp. 2d 642 (E.D.N.Y. 2012) ................................................................. 21

*Tomassini v. FCA U.S. LLC,* No. 3:14-cv-1226 (MAD/DEP), 2015 WL 3868343
   (N.D.N.Y. June 23, 2015)............................................................................... 19

*Ward v. TheLadders.com, Inc.*,
   3 F. Supp. 3d 151 (S.D.N.Y. 2014) .................................................................... 5

*Warren W Fane, Inc. v. Tri-State Diesel, Inc.*,
   No. 1:12-cv-1903, 2014 WL 1806773 (N.D.N.Y. May 7, 2014) .................................. 9

*Woods v. Maytag Co.*,
   No. 10-CV-0559 (ADS)(WDW), 2010 WL 4314313 (E.D.N.Y. Nov. 2, 2010).................... 19

*Xerox Corp. v. Graphic Mgmt. Servs., Inc.*,
   959 F. Supp. 2d 311 (W.D.N.Y. 2013)................................................................. 10

*Zaretsky v. William Goldberg Diamond Corp.*,
   No. 14 CIV. 1113 SAS, 2014 WL 4160232 (S.D.N.Y. Aug. 18, 2014)............................ 4

## Statutes

N.Y. GEN. BUS. LAW § 349................................................................................. *passim*

N.Y. U.C.C. § 2-314 ....................................................................................... 8

N.Y. U.C.C. § 2-316 ....................................................................................... 11

N.Y. U.C.C. § 2-316(2)..................................................................................... 8

N.Y. U.C.C. § 2-725(2)..................................................................................... 11

## Rules & Regulations

Fed. R. Civ. P.  12(b)(1)..................................................................................................... 1

Fed. R. Civ. P.  9(b) ................................................................................................. 1, 14, 16

Fed. R. Civ. P. 12(b)(6)................................................................................................. 1, 5

Defendant, Volvo Group North America, LLC ("Volvo"), by and through the undersigned counsel, respectfully submits this Memorandum of Law in Support of its Motion to Dismiss.

## **NATURE OF THE MATTER BEFORE THE COURT**

Plaintiff filed this action on April 18, 2019, alleging claims against Volvo that arise from a supposed design defect in Volvo's D13 engines.  Notwithstanding that Plaintiff obtained the trucks containing the D13 engines in early 2015 and allegedly began experiencing problems with the trucks immediately, Plaintiff has waited over four years to file its Complaint asserting claims for breach of express warranty, breach of the implied warranty of merchantability, fraud, breach of the duty of good faith and fair dealing, and violation of New York General Business Law section 349 ("GBL § 349").  Because of the many deficiencies in Plaintiff's Complaint, Volvo now moves to dismiss Plaintiff's claims pursuant to Rules 9(b), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure.

Plaintiff's First claim for breach of express warranty should be dismissed because the written warranty on which it is premised does not cover the design defect alleged by Plaintiff. Plaintiff's Second claim for breach of the implied warranty of merchantability fails because it is time-barred and, in any event, the implied warranty was effectively disclaimed by a written warranty.  Plaintiff's Third claim for common-law fraud fails because the allegations of the Complaint do not meet the heightened pleading standards of Rule 9(b) and do not adequately allege Volvo's knowledge of the falsity of any statements at the time they were made.  Plaintiff's Fourth claim for breach of the implied duty of good faith and fair dealing fails because it is duplicative of Plaintiff's breach of warranty claims.  Finally, Plaintiff's Fifth claim for violation of GBL § 349 is time-barred under the applicable statute of limitations and, to the extent it depends on allegations of conduct during the limitations period, the Complaint alleges conduct that is not "consumer oriented."

1

## STATEMENT OF FACTS[1]

Plaintiff Orange Transportation Services, Inc. ("Plaintiff" or "OTSI") purports to be the owner or former owner of Volvo trucks containing Volvo D13 engines.[2]  (Compl. ¶¶ 35, 72.)  In 2014, Plaintiff sought to purchase a new fleet of trucks for its business.  (Id. ¶ 32.)  Plaintiff's vice-president, Tony Kirik, met with the owner of Buffalo Truck Center, Inc. ("BTC") to discuss purchasing new trucks and immediately expressed skepticism about purchasing trucks with D13 engines because of his concern that they experienced frequent injector failures.  (Id. ¶ 32.) Kirik also spoke with certain agents of Volvo who explained that the D13 engine had been performing very well for fleet customers and would meet Plaintiff's requirements.  (Id. ¶ 33-34.)  Agents of BTC then secured an order from Plaintiff for twenty-four Volvo trucks with the D13 engines on October 9, 2014.  (Id. ¶ 35.)  The last truck was delivered to Plaintiff on April 8, 2015.  (Id.)  Volvo provided a Standard Volvo Engine Warranty, warranting the engines to be free from defects in material and workmanship up to specified time and mileage limits.  (Id. ¶ 79.)

Plaintiff alleges that it immediately experienced problems with the trucks.  (Id. ¶¶ 36-37.)[3] Thereafter, Plaintiff's principal, Kirik, had numerous conversations and meetings with BTC's and Volvo's representatives to discuss the recurring engine issues.  (Id. ¶¶ 39, 48, 53-56.)  Kirik also learned, around October 26, 2016, that many Volvo truck owners were having the same issues with D13 engines and that Volvo had developed a new common rail fuel system to resolve the

---

[1] For purposes of this Motion, Volvo assumes the truth of the non-conclusory factual allegations in Plaintiff's Complaint.  Nicosia v. Amazon.com, Inc., 834 F.3d 220, 230 (2d Cir. 2016).  By repeating Plaintiff's allegations herein, Volvo does not in any way concede that the allegations are true or accurate.

[2] Plaintiff also makes the conclusory allegation that it leased trucks with the alleged design defect, but offers no facts relating to any lease.  (Compl. ¶ 103.)

[3] Although difficult to follow, Plaintiff makes specific factual allegations about repairs performed on ten of the trucks it allegedly owned.  (Compl. ¶¶ 37-38, 40-43, 45, 52-53, 57-58, 60 (alleging repairs made on Units 564, 568, 570, 572, 4048, 4052, 4058, 4060, 6000, and 6010).)

problem.  (*Id.* ¶ 40.) By November 15, 2017, Kirik had reached the conclusion that Volvo knew of the engine defect when Plaintiff purchased the trucks, as evidenced by the introduction of the new fuel rail system and low trade-in offers. (*Id.* ¶¶ 55-56.) Volvo and BTC personnel negotiated a possible trade-in offer with Kirik for Plaintiff to obtain new trucks, but Kirik rejected their offers, insisting on more favorable warranty terms and noted that other competitors offered better pricing. (*Id.* ¶¶ 53-55.)  No agreement was ultimately reached on a trade-in and Plaintiff sold all of its trucks with the D13 engine.  (*Id.* ¶ 72.)

Plaintiff alleges that the D13 engines contain a common, material design defect that causes the trucks to break down or malfunction.  (*Id.* ¶¶ 1-2.)  Plaintiff alleges the common defect causes "repeated breakdowns and malfunctions" causing Plaintiff to have to bring its trucks in for multiple repair attempts.  (*Id.* ¶ 1.)  Plaintiff alleges that the Volvo dealerships were unable to both quickly and sufficiently fix the purported problems.  (*Id.*)  Plaintiff further claims Volvo knew of the supposed defect, knew it could not adequately or quickly repair the defect, and concealed this information from Plaintiff.  (*Id.* ¶ 2.)  Plaintiff claims these failures have resulted in lost income and other damages.  (*Id.* ¶¶ 7, 30, 48, 58, 70.)

Plaintiff's Complaint alleges five claims against Volvo for breach of express warranty, breach of the implied warranty of merchantability, common law fraud, breach of the duty of good faith and fair dealing, and violations of GBL § 349.  (*Id.* ¶¶ 77-127.)  Plaintiff seeks "actual, general, specific, incidental, statutory, punitive, and consequential damages."  (*Id.* p. 29.) Although Plaintiff sold all of its trucks with the D13 engine, Plaintiff curiously seeks injunctive or declaratory relief that would require Volvo to "repair, recall, and/or replace" the purported defective engines, extend the applicable warranty, and provide Plaintiff with "appropriate curative notices regarding the existence and cause of the Engine Defect."  (*Id.*)

3

## ARGUMENT

I. **PLAINTIFF LACKS STANDING TO ASSERT CLAIMS AS TO ALL BUT SIX OF THE TRUCKS AT ISSUE.**

### A.    Legal Standard

Article III of the Constitution limits the jurisdiction of federal district courts "to the resolution of 'cases' and 'controversies.'"  *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012).  To satisfy this jurisdictional requirement of Article III standing, "(1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (citation omitted).  As a result, litigants ordinarily may not assert the rights or legal interests of others in order to obtain relief from injury to themselves.  *Zaretsky v. William Goldberg Diamond Corp.*, No. 14 CIV. 1113 SAS, 2014 WL 4160232, at *2 (S.D.N.Y. Aug. 18, 2014) (citation and quotation marks omitted). "For each form of relief sought, a plaintiff 'must demonstrate standing separately.' *Id.* (citation omitted).  A court may consider matters outside of the pleadings when determining whether subject matter jurisdiction exists. *M.E.S., Inc. v. Snell*, 712 F.3d 666, 671 (2d Cir. 2013).

### B.    Plaintiff Lacks Standing to Assert Claims as to All But Six of the Trucks in Question.

Plaintiff lacks standing to assert claims arising out of Volvo's conduct related to the sale of and warranties for eighteen of the trucks at issue because, despite Plaintiff's allegation that it "secured an order for twenty-four" trucks with the D13 engine (Compl. ¶ 35), Plaintiff only purchased six of the vehicles in question, as evidenced by the invoices from BTC and financing agreements with the holder of the notes on the vehicles.  (*See id.* ¶¶ 35, 73; Hansen Decl. Exs. A-D.)

A plaintiff who was not the purchaser or an owner of goods cannot assert warranty claims or claims under New York's General Business Law § 349 based on misleading statements or omissions concerning the goods. *Dimich v. Med-Pro, Inc.*, 34 A.D.3d 329, 330 (1st Dept. 2006). Thus, Plaintiff lacks standing to assert claims based on conduct involving eighteen of the trucks at issue.

## II.     EACH OF PLAINTIFF'S CLAIMS ARE SUBJECT TO DISMISSAL UNDER RULE 12(b)(6).

### A.     Legal Standards Under Rule 12(b)(6).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ward v. TheLadders.com, Inc.*, 3 F. Supp. 3d 151, 156 (S.D.N.Y. 2014) (quoting *Ashcroft*, 556 U.S. at 678). In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept as true all well-pleaded allegations but may disregard legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by merely conclusory statements." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009)).

In addition, the Court may consider a written instrument that is integral to the complaint, even where it is not attached as an exhibit or incorporated by reference. *Nicosia*, 834 F.3d at 230. "This generally occurs when the material considered is a 'contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint.'" *Id.* (citation omitted).

5

### B.      Plaintiff Fails to State a Claim for Breach of Express Warranty.

Plaintiff alleges that Volvo expressly warranted that the trucks were of high quality and would work properly.  Plaintiff also asserts that Volvo provided a Standard Volvo Engine Warranty ("Engine Warranty") that warrants the D13 engines to be free from defects in material and workmanship under normal use and service up to specified time and mileage limits and that obligates Volvo to repair or replace defective parts within those limits.[4]  (Compl. ¶¶ 78-79, 81.) Plaintiff alleges Volvo breached "this warranty" by selling Plaintiff trucks with a known engine defect and failing to repair or replace the allegedly faulty engines. (*Id.* ¶¶ 82-83.)  Plaintiff's express warranty claim is subject to dismissal because Plaintiff fails to allege a defect covered by the Engine Warranty, which, by its terms, covers only defects in material and workmanship.

"Under New York law, 'a manufacturing defect … results when a mistake in manufacturing renders a product that is ordinarily safe dangerous so that it causes harm' and 'a design defect … results when the product as designed is unreasonably dangerous for its intended use.'"  *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 554 (S.D.N.Y. 2016) (quoting *McCarthy v. Olin Corp.*, 119 F.3d 148, 154-55 (2d Cir. 1997)).  The key distinction between a manufacturing and design defect is the manufacturer's intent.  *Miller v. Hyundai Motor Am.*, No. 15-CV-4722 (TPG), 2017 WL 4382339, at *4 (S.D.N.Y. Sept. 29, 2017).  "A manufacturing defect is a mistake—an unintended deviation from normal or routine production that renders an ordinarily safe product dangerous. Design defects, on the other hand, 'involve products made in the precise manner intended by the manufacturer,' which are unreasonably dangerous as designed."  *Id.* (citation omitted).  Allegations that all of the type of vehicle at issue have a "common defect"

---

[4] Plaintiff further alleges that Volvo provides extended coverage plans for engine failures, but does not allege that it obtained an extended warranty. (Compl. ¶ 80.)

strongly suggests "an intentional decision on the part of the manufacturer." *Catalano*, 167 F. Supp. 3d at 555; *see also Garcia v. Chrysler Grp., LLC*, 127 F. Supp. 3d 212, 226 (S.D.N.Y. 2015).

"It is well settled that where, as here, a warranty protects against defects in 'materials or workmanship,' the warranty covers manufacturing defects, but not design defects." *Haag v. Hyundai Motor Am.*, 294 F. Supp. 3d 102, 105 (W.D.N.Y. 2018); *Catalano*, 167 F. Supp. 3d at 555.   A plaintiff that "makes only 'conclusory references to manufacturing defects,' and instead relies on allegations and/or evidence that the claimed defects are common to an entire class of vehicles based on their design, rather than the result of an error in the manufacturing process, … cannot prevail on an express warranty claim concerning materials and workmanship." *Haag*, 294 F. Supp. 3d at 105.

As alleged by Plaintiff, the Engine Warranty "warrants Volvo engines to be free from defects in *material and workmanship* under normal use and service up to specified time and mileage limits." (Compl. ¶ 79 (emphasis added); Surrett Decl. Ex. E, at 3)).[5]  Plaintiff plainly alleges that the D13 engine has "a material design defect." (Compl. ¶ 2; *see also id.* ¶ 47 (injector "over-sprays" cause higher temperature that deteriorates sealant around the injector cups); ¶ 54 (Volvo's change in design allegedly demonstrates knowledge of the defect); ¶ 59 (problems allegedly caused after Volvo introduced a new Selective Catalytic Reduction system); ¶ 62 (Volvo allegedly designed common rail fuel system to address the engine defect); ¶¶ 63-68 (failures allegedly caused by injectors injecting excessive fuel, which requires pistons to operate at higher temperatures and pressures causing sealant on injector cups to deteriorate allowing coolant to leak into the combustion chamber, which in turn causes exhaust valves to drop or fracture and further

---

[5] The Court may properly consider the Engine Warranty (Surrett Decl. Ex. E), on which Plaintiff's express warranty claim depends. *Chiarelli v. Nissan N. Am., Inc.*, No. 14-CV-4327 (NGG)(VVP), 2015 WL 5686507, at *5 (E.D.N.Y. Sept. 25, 2015).

damage other components and systems); ¶ 103 (defendant failed to disclose "the inherent design defect with the engines"). Plaintiff also alleges a "common defect" in the engines that "is present in all the trucks," further supporting a finding that Plaintiff alleges a design defect. (*Id.* ¶¶ 1, 17.)

While a plaintiff may allege both design and manufacturing defects, Plaintiff does not even make conclusory allegations that the D13 engines suffers from defects in material or workmanship. *Garcia*, 127 F. Supp. 3d at 226. Unlike cases in which courts have denied a motion to dismiss because the allegations of the complaint could lend themselves to a manufacturing defect as well as a design defect, Plaintiff's Complaint plainly alleges only a design defect. *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 467 (S.D.N.Y. 2014). Because Plaintiff has not alleged any defect that is covered by the Engine Warranty, the breach of express warranty claim should be dismissed.

C.     **Plaintiff's Claim for Breach of the Implied Warranty of Merchantability Fails Because It Was Effectively Disclaimed and Is Otherwise Barred by the Applicable Statute of Limitations.**

Plaintiff alleges that Volvo breached the implied warranty of merchantability because the "trucks were not of merchantable quality due" to the design defect in the D13 engine. (Compl. ¶ 97.) Plaintiff's claim for breach of the implied warranty of merchantability fails for at least two independent reasons: (1) it was effectively disclaimed by the Engine Warranty and (2) it is barred by the applicable statute of limitations.

1.     The Engine Warranty Effectively Disclaimed the Implied Warranty of Merchantability.

Section 2-314 of the New York Uniform Commercial Code governs the implied warranty of merchantability. N.Y. U.C.C. § 2-314. Under section 2-316(2), the implied warranty can be excluded by writing if the writing is conspicuous. *Kraft v. Staten Island Boat Sales, Inc.*, 715 F. Supp. 2d 464, 472 (S.D.N.Y. 2010). "A clause is conspicuous 'when it is so written that a reasonable person against whom it is to operate ought to have noticed it," such as where "it is in

larger or other contrasting type or color." *Id.* "Whether a term or clause is 'conspicuous' or not is for decision by the court." *Id.* To waive the implied warranty of merchantability, the disclaiming language must also specifically include the word "merchantability." *Id.*

The warranty certificates for the D-13 engine each contain a paragraph set off from other text that is in bold, all caps type and reads:

> **THIS WARRANTY IS EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES AND REPRESENTATIONS OR CONDITIONS, STATUTORY OR OTHERWISE, EXPRESS OR IMPLIED INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTY OF MERCHANTABILITY ….**

(Surrett Decl. Ex. E, at 3.)  Because the disclaimer is set apart on the page in bold, all caps text, and specifically includes the word "merchantability," the disclaimer is effective and Plaintiff may not assert a claim for breach of the implied warranty of merchantability. *Warren W Fane, Inc. v. Tri-State Diesel, Inc.*, No. 1:12-cv-1903, 2014 WL 1806773, at *8-10 (N.D.N.Y. May 7, 2014)

2.     The Disclaimer Is Not Unconscionable or Otherwise Unenforceable.

Plaintiff's claim that the disclaimer or limit is unconscionable and unenforceable is unavailing.  "Whether a warranty is unconscionable is a question of law for the Court to decide." *Bristol Vill., Inc. v. Louisiana-Pac. Corp.*, 170 F. Supp. 3d 488, 506 (W.D.N.Y. 2016).   In determining whether the warranty is unconscionable, the court is to analyze both the procedure by which the contract was formed and the substantive terms of the agreement." *Kraft*, 715 F. Supp. 2d at 477.   Procedurally, "[t]ransactions deemed unconscionable are often typified by either disparity in bargaining power, an atmosphere of haste and pressure, [or a] lack of understanding by one of the parties." *Bristol Vill., Inc.*, 170 F. Supp. 3d at 505.  Substantively, an unconscionable contract has been characterized as one that is "grossly unreasonable … in light of the mores and business practices of time and place." *Id.*  "It is only in exceptional cases where a provision of the contract is so outrageous that a contract might be rendered 'unenforceable on the ground of

substantive unconscionability alone." *Shema Kolainu-Hear Our Voices v. ProviderSoft, LLC*, 832 F. Supp. 2d 194, 202 (E.D.N.Y. 2010) (quotation marks and citation omitted).  Procedural and substantive unconscionability operate "on a 'sliding scale,' meaning that 'the more questionable the meaningfulness of choice, the less imbalance in a contract's terms should be tolerated and vice versa.'"  *Id.* at 201 (citation omitted).  Further, "there is a presumption of conscionability when the contract is between businessmen in a commercial setting."  *Xerox Corp. v. Graphic Mgmt. Servs., Inc.*, 959 F. Supp. 2d 311, 320 (W.D.N.Y. 2013).

Plaintiff makes only conclusory allegations that the Engine Warranty's disclaimer of the implied warranty is unconscionable and enforceable because Defendant knowingly sold a defective product without informing Plaintiff of the defect.  (Compl. ¶ 99.)  Similarly, Plaintiff elsewhere makes the conclusory allegation that Plaintiff had no meaningful choice in the terms of the warranty and that "[a] gross disparity of bargaining power existed" between the parties.  (*Id.* ¶ 91.)  Such allegations are insufficient to demonstrate unconscionability.

Apart from its recitation of legal elements, the Complaint's specific factual allegations discount Plaintiff's claim as to procedural unconscionability.  Plaintiff alleges that it began seeking to purchase a new fleet of trucks in 2014 and engaged in extensive discussions with BTC and Volvo representatives, and even toured the factory where the trucks were assembled and Volvo's customer service center.  (*Id.* ¶¶ 32-35.)  These allegations demonstrate that this was not a rushed or high-pressure transaction.  Further, Plaintiff alleges that it was skeptical of purchasing trucks with Volvo D13 engines from the outset, and had compared the performance of these trucks to those of competitors, demonstrating Plaintiff's understanding of potential risks and awareness of other options for purchasing trucks.  (*Id.* ¶¶ 32, 55.)  Lastly, Plaintiff's claim that there existed a disparity in bargaining power is belied by the fact that it is a corporation whose president has

purchased over 150 trucks in his 17-year trucking career and who has a demonstrated ability to negotiate with Volvo as demonstrated by Kirik's insistence on a 500,000-mile full warranty when negotiating a potential trade-in deal with Volvo personnel.  (*Id.* ¶ 55, 69.)  In sum, Plaintiff is an experienced purchaser of long-haul trucks that had and was aware of other options in purchasing trucks and was capable of negotiating for a more extensive warranty if it believed the one offered by Volvo to be unfair.  These allegations fail to demonstrate procedural unconscionability.

The terms of the Engine Warranty are also not substantively unconscionable.  Warranties that limit a manufacturer's obligation to repair or replacement of a vehicle's parts for specified time and mileage limits are routine in the industry, expressly permitted by the UCC, and frequently upheld by courts.  N.Y. U.C.C. § 2-316; *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 23, 250 (2d Cir. 1986); *Chiarelli*, 2015 WL 5686507, at *7 (rejecting argument that time and mileage limitation was unconscionable).  Plaintiff has, therefore, failed to allege that the Engine Warranty's disclaimer of the implied warranty of merchantability is unconscionable.

        3.      <u>Plaintiff's Implied Warranty Claim is Barred by the Statute of Limitations.</u>

Under New York UCC section 2-725(2), "[a] breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered."  Thus, New York's four-year statute of limitations for implied warranty claims runs from the time of the delivery of the vehicle, regardless of when a defect is discovered.  *Catalano*, 167 F. Supp. 3d at 557-58.  "The date of tender rule for determining the accrual date for warranty actions is quite rigid."  *Orlando v. Novurania of Am., Inc.*, 162 F. Supp. 2d 220, 223 (S.D.N.Y. 2001).  Further, the exception in section 2-725 does not apply to implied warranties, which "by definition, cannot '*explicitly*' extend

to the future performance of the goods." *Brainard v. Freightliner Corp.*, No. 02-CV-0317E(F), 2002 WL 31207467, at *2 (W.D.N.Y. Oct. 1, 2002).

Plaintiff alleges that the last truck was delivered to it on April 8, 2015.  (Compl. ¶ 35.) Plaintiff commenced this action on April 18, 2019.  Plaintiff's claim was therefore filed outside of the four-year statute of limitations and is time-barred.  Further, because the limitations period for implied warranty claims runs from tender, not discovery, "there is no basis to apply equitable tolling" to such claims.  *Catalano*, 167 F. Supp. 3d at 558.  Even if tolling could be applied to this claim, Plaintiff's tolling argument is unavailing.

"Under New York law, the doctrines of equitable tolling or equitable estoppel 'may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action.'"  *Bristol Vill., Inc.*, 170 F. Supp. 3d at 497 (W.D.N.Y. 2016) (quoting *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007)).  To adequately allege equitable tolling, a plaintiff must plead that "(1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's discovery of the nature of the claim within the limitations period and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled."  *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012).  "If a plaintiff is on notice of potential wrongdoing but takes no steps to investigate further, equitable estoppel does not apply because of a failure of diligence."  *Marshall*, 51 F. Supp. 3d at 463.  "[T]he issue is not whether plaintiff was in possession of all of the information necessary to prevail on his claims, but whether plaintiff had enough information to commence a lawsuit."  *Id.* at 464; *see also Four Seasons Solar Prod. Corp. v. Southwall Techs., Inc.*, 100 F. App'x 12, 13 (2d Cir. 2004) ("The question is whether plaintiff knew enough to sue.").

Volvo disputes that it wrongfully concealed materials facts relating to any alleged wrongdoing that prevented Plaintiff's discovery of the nature of its claim, but believes that rejection of this argument is proper on the third element alone.  In support of its tolling theory, Plaintiff makes only the conclusory allegation that any applicable statute of limitations has been tolled by Volvo's "knowing and active concealment and denial of the facts alleged herein" and that Plaintiff could not have discovered the true, latent defective until shortly before this litigation was commenced." (Compl. ¶ 16.)  However, the Complaint is replete with allegations that Plaintiff was aware of sufficient facts on which to assert the claims alleged in the Complaint years before commencing litigation.  Plaintiff alleges that it immediately experienced problems with the trucks and learned on October 26, 2016 that many Volvo truck owners were having the same issues with D13 engines and that Volvo had developed a new common rail fuel system to resolve the problem. (*Id.* ¶¶ 36, 40.)  On November 15, 2017, in a meeting with Volvo's representatives, Kirik raised the D13 engine's high malfunction rate and Volvo's inability to properly repair the engines.  (*Id.* ¶ 54.)  At that meeting, Kirik also expressed his belief that Volvo knew of the problem when Plaintiff purchased the trucks, as evidenced by the introduction of the new fuel rail system and low trade-in offers. (*Id.* ¶¶ 55-56.)  These allegations defeat Plaintiff's claim that the statute of limitations should be equitably tolled because it knew of sufficient facts giving rise to its claim for approximately a year-and-a-half before it filed suit.  *Feliciano v. Gen. Motors LLC*, No. 14 CIV. 06374 (AT), 2016 WL 9344120, at *11 (S.D.N.Y. Mar. 31, 2016) (failure to bring claims for more than a year after knowledge of the problem shows a lack of due diligence).

Accordingly, Plaintiff's claim that any applicable statute of limitations should be equitably tolled or that Volvo should be estopped from asserting the defense should be rejected.

**D.      Plaintiff Fails to Satisfy the Heightened Pleading Requirement of Rule 9(b) and Fails to Adequately Allege All of the Elements of a Claim for Fraud.**

Plaintiff alleges that Volvo made material misrepresentations or omissions of presently existing or past fact concerning "the inherent design defect," which induced Plaintiff to purchase the trucks with the D13 engine.  (Compl. ¶ 103.)  Plaintiff's claim is subject to dismissal because Plaintiff fails to satisfy the heightened pleading requirements of Rule 9(b) and otherwise fails to plead facts in support of each essential element of a claim for fraud.

**1.      Plaintiff Has Failed to Satisfy the Heightened Pleading Standard for Fraud.**

Plaintiff's claim for fraud fails because Plaintiff fails to satisfy the heightened pleading standard for fraud under Rule 9(b).  Specifically, Plaintiff fails to allege sufficient facts as to Volvo's alleged affirmative misrepresentations and fails to allege facts giving rise to a strong inference of fraudulent intent as to Volvo's alleged omissions or concealment.

Under the Federal Rules of Civil Procedure, a claim for fraud is subject to a heightened pleading standard.  Rule 9(b) states "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Thus, when pleading a fraud claim, the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *DiMuro v. Clinique Labs., LLC*, 572 F. App'x 27, 30 (2d Cir. 2014) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

For claims of fraudulent concealment or omission, "where the plaintiff is unable to specify the time and place because no act occurred, the complaint must still allege: (1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff; and (4) what the defendant obtained through fraud." *Catalano*, 167 F. Supp. 3d at 560.  In addition, a plaintiff must allege facts giving rise to "a strong

14

inference of fraudulent intent," which may be established by alleging facts (a) to show that defendants had both motive and opportunity to commit fraud, or (b) that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004)

a.    Plaintiff Fails to Allege Sufficient Detail as to Volvo's Alleged Misrepresentations under Rule 9(b).

Plaintiff alleges that: Volvo touted its D13 engines engine as a 'very fuel-efficient, powerful and lightweight engine, designed to meet current and future EPA regulations while improving reliability and lowering operating costs'"; "Volvo represented '[t]he engine provides impressive performance with excellent low-end torque for improved drivability. The new variable geometry turbo also makes the engine very responsive while improving fuel economy"; and "Volvo stated that the D13 engine was 'the perfect choice for line haul, regional and vocational operations' and 'delivers a reliable, cost-effective and powerful solution—in a light, high-performance package—for a wide variety of applications." (Compl. ¶ 23.)  To the extent Plaintiff relies on these claims in asserting a fraud claim, these allegations fail under Rule 9(b) because they do not specify who made these statements, when or where they were made, or how they are fraudulent.[6]  *Feliciano*, 2016 WL 9344120, at *14.

Plaintiff further alleges that Volvo's regional fleet sales manager, Christina Ameigh, "explained that Volvo's D13 engine had been performing very well for Volvo's fleet customers"[7] and "verified that the D13 engines could meet OTSI's requirements." (Compl. ¶¶ 33-34.)  The

---

[6] Further, such statements amount to puffery that cannot form the basis of a fraud claim.  *In re: Gen. Motors LLC Ignition Switch Litig.*, Nos. 14-MD-2543 (JMF), 14-MC-2543 (JMF), 2016 WL 3920353, at *10 (S.D.N.Y. July 15, 2016) ("[G]eneral statements about a brand's quality or a product's safety, are too vague or lacking in factual content to be actionable.").

[7] This statement also amounts to puffery that is not actionable.  *In re: Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 3920353, at *10.

only other pre-sale allegation on which Plaintiff could have relied in purchasing the trucks is the claim that "Volvo trucks' engineers talked about many of the improvements that Volvo is working on and implementing, being leaders in innovation." (*Id.* ¶ 34.) These allegations are plainly deficient to satisfy Rule 9(b). Ameigh's alleged representations were allegedly made at one of the meeting between Kirik and BTC personnel, however, Plaintiff fails to allege when or where this meeting took place. Allegations that unidentified engineers discussed alleged improvements are even more plainly deficient, in that they fail to even identify a particular speaker.

Accordingly, Plaintiff's claim for fraudulent misrepresentation is subject to dismissal under Rule 9(b).

> b. Plaintiff Fails to Allege Facts Raising a Strong Inference of Fraudulent Intent in Support of Its Fraudulent Omission or Concealment Claim.

Plaintiff alleges that, at the time of sale, Volvo "did not fully and truthfully disclose to its customers the true nature of the inherent design defect with the engines." (Compl. ¶¶ 103, 116.) While Plaintiff is not obligated to specify the time or place of the alleged omission, the Complaint utterly fails to allege what Volvo allegedly obtained through the fraud.

Factual allegations giving rise to a strong inference of fraudulent intent may include (1) facts showing that defendant had both motive and opportunity to commit fraud, or (b) facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. *Eternity Glob. Master Fund Ltd.*, 375 F.3d at 187. Reckless conduct "must, at least, be 'highly unreasonable' and represent 'an extreme departure from the standards of ordinary care.'" *Catalano*, 167 F. Supp. 3d at 560-61 (citation omitted). Courts in this Circuit have previously held that, even where a plaintiff alleges that a defendant auto manufacturer knew of a latent defect, Rule 9 is not satisfied where the complaint does not identify a specific motive to commit fraud or fails to allege a "clear duty to disclose." *Id.* at 560-61. In *Catalano*, the court held that an inference that a manufacture

committed fraud "to increase sales/profits" is "a generalized motive that could be possessed by any corporate actor" and is insufficient to satisfy Rule 9.  *Id.* at 560.  Further, a defendant's knowledge of a defect and a failure to disclose is not enough to establish reckless conduct absent a "clear duty to disclose," which, as relevant here, cannot be established where the complaint contains no allegation that the manufacturer solely possessed material information relevant to the defects.  *Id.* at 560-61.

Here, Plaintiff does not specify a particular motive for Volvo to fraudulently conceal or fail to disclose the alleged defect in the D13 engines.  The only inference to be made is that Volvo committed the fraud to induce sales and thereby increase profits, which is plainly insufficient.  *Id.* Further, Plaintiff fails to allege the type of "highly unreasonable" conduct that would support a strong inference of intent because it makes no allegation that information about the defect was in Plaintiff's sole possession.  While Plaintiff makes the conclusory allegation that "Defendant was and remains under a continuing duty to disclose to Plaintiff" the defect, the Complaint fails to offer even a conclusory allegation that Volvo had exclusive knowledge of material facts.  (Compl. ¶ 17.) Plaintiff, therefore, fails to satisfy Rule 9 as to its claim for fraudulent omission or concealment. *Catalano*, 167 F. Supp. at 560-61.

> 2.    Plaintiff Fails to Adequately Allege Volvo's Knowledge of the Defect at the Time the Alleged Statements or Omissions Were Made.

To state a claim for fraud, Plaintiff must plead particularized facts showing "(1) a misrepresentation or material omission of fact which was false and known to be false by defendant, (2) made for the purpose of inducing the other party to rely upon it, (3) justifiable reliance by the other party on the misrepresentation or material omission, and (4) injury."  *Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 421 (1996).

Plaintiff alleges that Volvo "made material misrepresentations and omissions concerning" the "true nature of the inherent design defect with the engines" with knowledge as to the falsity of their statements and omissions.  (Compl. ¶¶ 103-04.)  Plaintiff alleges that Volvo knew of the engine defect based on "numerous complaints that have been made to Volvo by Plaintiff and other drivers of vehicles with the defective engine." (*Id.* ¶ 6.)  Plaintiff also alleges that Volvo had knowledge of the defect based on internet postings such as blogs and consumer websites where consumers of complained of the exact same problems with the D13 engine.  (*Id.* ¶ 31.)  Further, Plaintiff alleges that Volvo knew of the defect at the time of the sale because it "had designed a common rail fuel system" to address the defect, which curiously was not implemented for nearly two years after Plaintiff placed an order for the trucks. (*Id.* ¶¶ 40, 62.)  These allegations are insufficient to create an inference that Volvo knew of the alleged defect at the time that it made the misrepresentations or omissions on which Plaintiff supposedly relied in purchasing the trucks.

First, Plaintiff's numerous complaints to Volvo occurred *after* it purchased the trucks and, therefore, cannot demonstrate Volvo's knowledge of the defect *before* Plaintiff's purchase. Second, the allegations concerning other customer complaints to Volvo and in public online postings give no indication of when these complaints or postings were made, making it impossible to tell when Volvo allegedly had reason to know of the defect, or even whether the complaints refer to the same D13 engine sold to plaintiff or one of the many redesigns that Volvo allegedly made.  (Compl. ¶¶ 6, 24, 31.)  Finally, Plaintiff's factual allegations do not lend themselves to the plausible inference that Volvo knew of the design defect because it created a new common rail fuel system that was implemented around October 2016, two years after Plaintiff secured orders for the trucks on October 9, 2014.  (*Id.* ¶¶ 35, 40.)

18

Thus, Plaintiff's allegations fail to allege that Volvo knew, at the time of the alleged misrepresentations and omissions, of the alleged defects in the version of D13 engines Plaintiff purchased.[8]  *Compare Woods v. Maytag Co.*, No. 10-CV-0559 (ADS)(WDW), 2010 WL 4314313, at *8-9 (E.D.N.Y. Nov. 2, 2010) (allegations that defendant knew of defect based on its own reports, service bulletins, documents, and memoranda and on the number of repairs performed by defendant's dealers and service centers insufficient to show knowledge where no specificity was given as to when the documents were created or repairs made), *with Catalano*, 167 F. Supp. at 559 (complaints to the NHTSA and on consumer forums, repair invoices, warranty claims, and technical service bulletins issued by defendant concerning the defect support an inference of knowledge), *and Tomassini v. FCA U.S. LLC,* No. 3:14-cv-1226 (MAD/DEP), 2015 WL 3868343, at *6-7 (N.D.N.Y. June 23, 2015) (allegations that defendant acknowledged that the failure was common and the replacement part was backordered due to an influx of the failures, along with allegations that nearly 130 consumers filed complaints with regulatory agencies resulting in an investigation were sufficient to allege knowledge of the defect).  While a defendant's awareness of a defect may be shown by consumer complaints to the defendant, regulatory agencies, or on consumer forums, cases that have found sufficient allegations of knowledge contain much more detailed factual allegations in support of the inference than Plaintiff offers in its Complaint.

Because Plaintiff fails to allege Volvo's knowledge of the defect, it fails to allege an essential element of its fraud claim. Thus, the Court should dismiss Count three of the Complaint.

---

[8] Although Plaintiff's failure to comply with Rule 9 makes it difficult to determine the date on which Volvo would have to have known of the alleged defect, it could have been no later than when Plaintiff ordered the trucks on October 9, 2014 for Plaintiff to have relied on those statements in purchasing the trucks.

**E.      Plaintiff's Claim for Breach of the Implied Duty of Good Faith and Fair Dealing Fails Because It Is Duplicative of Plaintiff's Express Warranty Claim.**

Plaintiff alleges that Volvo breached the covenant of good faith and fair dealing implicit in every contract[9] by "failing to notify Plaintiff of the engine defect in the trucks, and failing to fully and properly repair this defect." (Compl. ¶¶ 107-08.)  This claim fails because it depends on conduct that is identical to Plaintiff's claim for breach of express warranty.

"A claim for breach of the implied covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract." *First Solar, Inc. v. Absolute Process Instruments, Inc.*, No. 17-CV-8518 (JSR), 2018 WL 1166632, at *7 (S.D.N.Y. Feb. 8, 2018) (quoting *ICD Holdings S.A. v. Frankel*, 976 F. Supp. 234, 243-44 (S.D.N.Y. 1997)).  As Plaintiff incorporates each preceding and succeeding paragraph into its count for breach of the duty of good faith and fair dealing, it is impossible to divine what conduct, apart from Volvo's alleged failure to fully and properly repair the engine defect, supports this claim.  (Compl. ¶ 108.)  Because a failure to properly repair or replace a defective warranted part is the predicate for Plaintiff's breach of express warranty claim, (*id.* ¶ 83), this claim is redundant and should, therefore, be dismissed.

**F.      Plaintiff's GBL § 349 Claim Fails Because It Is Barred by the Statute of Limitations and Does Not Allege Consumer-Oriented Conduct.**

Plaintiff alleges that Volvo violated GBL § 349 by concealing or omitting material information about the D13 engine design defect to induce "Plaintiff and other members of the public" to purchase the defective trucks that Volvo sold. (*Id.* ¶¶ 111-12.)  Plaintiff further alleges that, following the sale of the vehicles, Volvo failed to disclose the defects to Plaintiff or other New York truck owners through warnings or recall notices, actively concealed from Plaintiff the

---

[9] Volvo assumes Plaintiff alleges a breach of implied duties in the Engine Warranty as Plaintiff alleges no other basis for finding that Plaintiff and Volvo were parties to a contract.

true fact that the engine was defective, and forced Plaintiff to pay for repair or replacement of the

defective engine.  (*Id.*¶¶ 117-18.)  Plaintiff also alleges Volvo's conduct in relation to its limited

warranty violated GBL § 349 in that Volvo advertised and sold limited warranties for the trucks,

with knowledge that the engine defect allegedly would not be revealed to the consumer until after

coverage expired, and, after the trucks were sold, performed repairs and replacements using

equally defective parts or refused to repair the engines.  (*Id.* ¶¶ 119-20.)

Plaintiff's allegations fail to state a claim for violation of GBL § 349, however, because

the claim is barred by the applicable three-year statute of limitations and, in any event, Plaintiff

fails to allege "consumer oriented" conduct as necessary to state a claim.

      1.    <u>Plaintiff's Claim for Violation of GBL § 349 Is Barred by the Three-Year Statute of Limitations.</u>

GBL § 349 is subject to a three-year statute of limitations, which "begins to run at the time

of the plaintiff's injury, or when all of the factual circumstances necessary to establish a right of

action have occurred, so that plaintiff would be entitled to relief."  *Bristol Vill., Inc.*, 170 F. Supp.

3d at 497 (quotation and citation marks omitted).  Where a plaintiff alleges that defendant's

misrepresentations and omissions were about a defect that existed in a product at the time that it

was purchased and delivered, plaintiff is injured when it receives the product.  *Id.* at 498-99;

*Marshall*, 51 F. Supp. 3d at 461-62 (a claim for misrepresentations and omissions about faulty

brakes accrued when plaintiffs purchased their vehicles, not when the brakes failed and plaintiffs

had to pay for repairs); *Statler v. Dell, Inc.*, 841 F. Supp. 2d 642, 648 (E.D.N.Y. 2012) (claim

premised on shipping products with defective parts accrued at the time of delivery).  The

"discovery rule is not applicable and cannot serve to extend that limitations period."  *Bristol Vill.,*

*Inc.*, 170 F. Supp. at 497.

21

Plaintiff alleges that it placed an order for the trucks in question on October 9, 2014, and that all trucks were delivered to it by April 8, 2015.  (Compl. ¶ 35.)  Accordingly, Plaintiff's claim accrued on April 8, 2015.  Yet Plaintiff, despite knowing all of the facts necessary to assert its claims in 2016 and 2017 (*id.* ¶¶ 36, 40, 54-56), waited until April 18, 2019 to file its Complaint. Thus, the Complaint was filed more than four-years after the claim accrued, well outside the three-year statute of limitations.  Plaintiff, therefore, fails to state a claim for violation of GBL § 349 premised on any pre-sale conduct concerning the trucks.

> 2.   Plaintiff Fails to Allege Consumer Oriented Conduct that Is Within the
>       Ambit of GBL § 349.

Plaintiff's allegations that Volvo's post-sale conduct in administering the Engine Warranty also fails because such conduct is not governed by GBL § 349.

To establish a claim under GBL § 349, a plaintiff must allege, *inter alia*, that the challenged act or practice was "consumer-oriented." *Bristol Vill., Inc.*, 170 F. Supp. 3d at 496.  To show that the act or practice was consumer-oriented, a plaintiff "must demonstrate that the acts or practices [complained of] have a broader impact on consumers at large."  *Shema Kolainu-Hear Our Voices*, 832 F. Supp. 2d at 204 (alteration in original) (citation omitted).  "Consumers in this context are defined as 'those who purchase goods and services for personal, family or household use.'"  *Id.* (citation omitted).  "The threshold requirement of consumer-oriented conduct is met by a showing that 'the acts or practices have a broader impact on the consumer at large' in that they are 'directed to consumers' or 'potentially affect similarly situated consumers.'"  *Cruz v. NYNEX Info. Res.*, 263 A.D.2d 285, 290 (N.Y. Sup. Ct. 2000).  Conclusory allegations that a defendant has directed the same or similar conduct towards other consumers are insufficient to state a claim.  *Spencer v. Ariz. Premium Fin. Co.*, No. 06-CV-160S, 2011 WL 4473178, at *8 (W.D.N.Y. Sept. 26, 2011). The statute's focus on consumers "does not preclude its application to disputes between business

per se, but it does severely limit it." *Id.* "Thus, while a plaintiff need not be a consumer to sue for deceptive consumer-oriented conduct under Section 349, no action under Section 349 can be maintained where the complained of conduct was directed towards the purchasers of goods or services which are not meant for the general public." *Mid Island LP v. Hess Corp.*, No. 658911/2013, 2013 WL 6421281, at *5 (Sup. Ct. New York County Dec. 2, 2013).

Plaintiff alleges that Volvo's alleged conduct impacts other consumers who purchased the D13 engine because Volvo's "acts and omissions related to the trucks and improper repair of the trucks, were committed generally to all purchasers of the truck." (Compl. ¶ 114; *see also id.* ¶¶ 31, 122.)  However, Plaintiff ignores the meaning of "consumer" in this context, *i.e.*, "those who purchase goods and services *for personal, family or household use*." *Shema Kolainu-Hear Our Voices*, 832 F. Supp. 2d at 204 (emphasis added).  It is difficult to conceive of any possible personal, family, or household use for a semi-truck or its engine.  New York courts have routinely held that GBL § 349 is inapplicable where the good or service sold is for commercial purposes. *Scarola v. Verizon Commc'ns, Inc.*, 146 A.D.3d 692, 693 (1st Dept. 2017) (billing for a business account for telecommunications services is not consumer-oriented); *Mid Island LP*, 2013 WL 6421281, at *5 (sale of diesel oils used to fuel boilers and that are procured by businesses is not consumer-oriented because the oils are not consumer products); *Cruz* , 263 A.D.2d at 290-91 (sale of advertising space is not consumer oriented because "advertisement space in the Yellow Pages is, by definition, a commodity available to businesses only").

Furthermore, as to Plaintiff's claim regarding the warranty claims process, this Court (via Judge Wolford) held that a similar claim would not be actionable under GBL § 349 because the conduct alleged amounted to a private contract dispute, unique to the parties. *Bristol Vill., Inc.*, 170 F. Supp. 3d at 500.  Because Plaintiff's allegations involve facts peculiar to the warranty

23

claims process administered by Volvo for Plaintiff's warranted vehicles, the dispute amounts to a private dispute between contracting parties and does not support a GBL § 349 claim.

Finally, even if the sale of and warranty claims processing for semi-trucks or their engines were somehow for personal, family, or household use, Plaintiff makes only general and conclusory allegations that Volvo's conduct was directed toward other consumers.  (Compl. ¶¶ 111, 114, 116-19, 121, 123.)  Such allegations are insufficient to support a claim for violation of GBL § 349. *Spencer*, 2011 WL 4473178, at *8.

Accordingly, the Court should dismiss Plaintiff's claim for violation of GBL § 349 with prejudice.

## CONCLUSION

For the reasons stated herein, Volvo respectfully requests that the Court dismiss each of Plaintiff's claim with prejudice.

Dated: May 20, 2019

Respectfully submitted,

**WARD GREENBERG HELLER & REIDY LLP**

By:_____s/ Jeffrey J. Harradine_____

Jeffrey J. Harradine
(jharradine@wardgreenberg.com)
1800 Bausch & Lomb Place
Rochester, New York 14604

**KILPATRICK TOWNSEND & STOCKTON LLP**

Richard J. Keshian
(RKeshian@KilpatrickTownsend.com)
[Application for admission by petition forthcoming]
Chad D. Hansen
(ChadHansen@KilpatrickTownsend.com)
[Application for admission by petition forthcoming]
1001 West Fourth Street
Winston-Salem, North Carolina 27101

*Attorneys for Defendant Volvo Group North America, LLC*

24