**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ORANGE TRANSPORTATION SERVICES, INC., <br><br>                  Plaintiff, <br><br>      vs. <br><br> VOLVO GROUP NORTH AMERICA, LLC <br><br>                  Defendant. | Case No. 6:19-cv-06289-FPG <br><br><br> **JURY TRIAL DEMANDED** |

**RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

I.   PLAINTIFF HAS STANDING ............................................................................................. 1

II.   PLAINTIFF SUFFICIENTLY ASSERTS CLAIM FOR MANUFACTURING DEFECTS IN MATERIALS AND WORKMANSHIP TO SUPPORT CLAIM FOR BREACH OF WARRANTY ........................................................................................... 2

III. PLAINTIFF STATES CLAIM FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY BECAUSE DISCLAIMER IS UNCONSCIONABLE ........................... 3

IV. PLAINTIFF ADEQUATELY PLEADS FRAUD AND MEETS RULE 9(B) STANDARD ...................................................................................................................... 4

   A.   Plaintiff Satisfies Heightened Pleading Standard ................................................. 4

      1.   Plaintiff Alleges Sufficient Detail as to Volvo's Alleged Misrepresentations under Rule 9(b) .................................................................................................................. 4

      2.   Plaintiff Alleges Facts Raising a Strong Inference of Fraudulent Intent in Support of Its Fraudulent Omission or Concealment Claim ..................................................... 5

   B.   Plaintiff Adequately Alleges Volvo's Knowledge of the Defect at the Time the Alleged Statements or Omissions Were Made ..................................................................... 6

V.   Plaintiff's Claim for Breach of the Implied Duty of Good Faith and Fair Dealing Is Not Duplicative of Plaintiff's Express Warranty Claim ......................................................... 8

VI. Plaintiff Alleges Consumer Oriented Conduct Within the Ambit of GBL § 349 ................... 8

VII. Plaintiff's Claim are Not Barred by Limitations .................................................................. 10

# TABLE OF AUTHORITIES

**CASES**

*Abbas v. Dixon*, 480 F.3d 636 (2d Cir. 2007) ................................................................. 10

*Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540 (S.D.N.Y. 2016) ................................ 2, 5

*Cruz v. NYNEX Info. Res.*, 263 A.D.2d 285, 703 N.Y.S.2d 103 (1st Dep't 2000) .......................... 9

*Dollar Phone Corp. v. Dun & Bradstreet Corp.*, No. 09-3645, 2010 U.S. Dist. LEXIS 134417, 2010 WL 5313737 (E.D.N.Y. Sept. 2, 2010) ................................................................. 9

*Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank*, 552 Fed. Appx. 13 (2d Cir. Jan. 9, 2014). ................................................................. 8

*Friedl v. City of N.Y.*, 210 F.3d 79 (2d Cir. 2000) ................................................................. 1

*Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212 (S.D.N.Y. 2015) ...................................... 3

*Haag v. Hyundai Motor Am.*, 294 F. Supp. 3d 102 (W.D.N.Y. 2018) ...................................... 3

*Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451 (S.D.N.Y. 2014) .................................. 3, 10

*Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) .................. 2

*Miller v. Hyundai Motor Am.*, No. 15-CV-4722, 2017 U.S. Dist. LEXIS 161729, 2017 WL 4382339 (S.D.N.Y. Sept. 29, 2017). ................................................................. 3

*Nicosia v. Amazon.com, Inc.*, 834 F.3d 220 (2d Cir. 2016) .................................................. 1

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank N.A.*, 85 N.Y.2d 20, 647 N.E.2d 741, 623 N.Y.S.2d 529 (1995) .............................................. 9

*Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67 (2d Cir. 1998) ...................................... 1

*Ret. Bd. of Policemen's Ann. & Ben. Fund v. Bank of New York Mellon*, No. 11-cv-5459, 2014 U.S. Dist. LEXIS 105805 (S.D.N.Y. July 30, 2014) ...................................... 8

*Rosa v. TCC Communs., Inc.*, No. 15cv1665, 2016 U.S. Dist. LEXIS 575, at *11-12 (S.D.N.Y. 2016) ................................................................. 8

*Shema Kolainu-Hear Our Voices v. ProviderSoft, LLC*, 832 F. Supp. 2d 194 (E.D.N.Y. 2010)... 8

*Spirit Locker, Inc. v. EVO Direct, LLC*, 696 F. Supp. 2d 296 (E.D.N.Y. 2010) ............................ 9

*Tropical Sails Corp. v. Yext, Inc.*, 2015 U.S. Dist. LEXIS 64722 (S.D.N.Y. 2015) ...................... 9

Plaintiff Orange Transportation Services, Inc., ("Plaintiff" or "OTSI"), responds to Defendant's Motion to Dismiss and states as follows:

## I.        PLAINTIFF HAS STANDING

Defendant Volvo Group North America, LLC ("Volvo") argues that Plaintiff lacks standing to assert claims as to all but six of the trucks. Volvo's argument is premised on invoices and financing agreements which are outside of the Complaint and not proper for consideration in a Rule 12 motion. In deciding a Rule 12(b)(6) motion, the Court is generally limited to reviewing the allegations contained within the four corners of the plaintiff's complaint. *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998)); *see also, e.g., Friedl v. City of N.Y.*, 210 F.3d 79, 83-84 (2d Cir. 2000) (finding that a district court errs if it relies on factual allegations contained in legal briefs or memoranda when it decides a Rule 12(b)(6) motion). These documents are not legal documents containing obligations upon which the plaintiff's complaint stands or falls. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016). Thus they are not properly considered by the Court to support Volvo's Rule 12 motion.

Even if Volvo is correct, Plaintiff would still have standing to assert claims with respect to six of the trucks, and thus Volvo would not be entitled to dismissal on grounds of standing. Furthermore, Plaintiff has standing with respect to all of the trucks discussed in the Complaint because the trucks that were not purchased by OTSI were purchased by companies affiliated with OTSI, which have all assigned their rights to OTSI to simplify this litigation. Additionally, the warranty registration in all Volvo dealers lists OTSI as the holder of the warranty.

## II. PLAINTIFF SUFFICIENTLY ASSERTS CLAIM FOR MANUFACTURING DEFECTS IN MATERIALS AND WORKMANSHIP TO SUPPORT CLAIM FOR BREACH OF WARRANTY

Volvo seeks to dismiss Plaintiff's breach of warranty claim, arguing that Plaintiff only complained about the design of the engines and did not complain about the materials or workmanship. To the contrary, Plaintiff alleged multiple defects in materials and workmanship. Specifically, Plaintiff alleged that "injector cups had very little sealant" and were not "wedged into the head properly" (Dkt. 1 at ¶37); that "heat in the pistons is causing stem valves to fracture" (Dkt. 1 at ¶40); the exhaust valve was broken and the liner was cracked (Dkt. 1 at ¶45); injector cups were repeatedly failing because injector cups did not seal properly with the sealant deteriorating over time (Dkt. 1 at ¶46); EGR coolers were failing due to combustion in the coolant causing expansion tanks to crack, hoses to leak, radiators to crack, then valves to fracture, which damaged the liners and the head (Dkt. 1 at ¶54); piston liners were cracking due to exhaust valve dropping (Dkt. 1 at ¶60); injectors injecting excessive diesel fuel leading to excessive heat and pressure which caused sealant to deteriorate (Dkt. 1 at ¶¶63-64); and failure of weak parts including reservoir cap, reservoir tank, hoses, clamps, radiator and valve stems (Dkt. 1 at ¶65).

Volvo relies on *Catalano v. BMW of N. Am., Ltd. Liab. Co.*, 167 F. Supp. 3d 540, 555 (S.D.N.Y. 2016). However, *Catalano* was a class action where the plaintiff alleged that all of the class vehicles shared common defects, "strongly suggesting that this was an intentional decision on the part of the manufacturer." *Id.*

> The nature of the alleged defects—the location of vital electronic components at the lowest part of the trunk compartment near the sunroof drainage tubes—further indicates that the defects at issue are based on the vehicles' design, not manufacturing process; Catalano's allegations smack of a deliberate design choice.

*Id*. The court found that the "allegations strongly suggest a defect in the Class Vehicles' design, rather than a mistake in the manufacturing process itself." *Id.* In the present case, Plaintiff does not allege that Volvo made deliberate design choices that led to the engine malfunctions.

Volvo also cites *Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 226-27 (S.D.N.Y. 2015), which held that "in a putative class action alleging breach of warranty claims, a manufacturing defect claim pled in the alternative to a design defect claim is subject to dismissal at the motion to dismiss stage where the complaint makes only 'offhand references to manufacturing defects' and the purported class includes 'all purchasers or lessees' of the vehicles at issue." The present case (1) is not a class action, (2) does not plead a manufacturing defect as an alternative to a design defect, (3) includes much more than offhand references to manufacturing defects, and (4) does not seek to recover for all purchasers and lessees of all vehicles at issue.

The other cases cited by Volvo are also class actions where the plaintiffs only alleged defective design without alleging any mistake or fabrication flaw. *See Haag v. Hyundai Motor Am.*, 294 F. Supp. 3d 102, 105 (W.D.N.Y. 2018); *Miller v. Hyundai Motor Am.*, No. 15-CV-4722, 2017 U.S. Dist. LEXIS 161729, at *12-13, 2017 WL 4382339, at *4 (S.D.N.Y. Sept. 29, 2017). Volvo also cites *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 467 (S.D.N.Y. 2014), a case that supports Plaintiff and found that the plaintiff's pleadings went beyond design defect such that the breach of warranty claim was sufficiently pled.

### III. PLAINTIFF STATES CLAIM FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY BECAUSE DISCLAIMER IS UNCONSCIONABLE

Volvo argues that Plaintiff made only conclusory allegations that the Engine Warranty's disclaimer is unconscionable. To the contrary, Plaintiff alleged that Defendant's attempt to disclaim or limit the implied warranty was substantively unconscionable because they knowingly

sold a defective product without informing purchasers about the defect. (Dkt. 1 at ¶90.) The nature of the defect and Defendant's knowledge of it are alleged throughout the Complaint. Moreover, Defendant's response attached the express warranty, which gives more grounds for unconscionability. Its limitations include the following: "Volvo Trucks North America's obligation is limited to, at its sole option, repair or replacement of parts ***which are acknowledged by it to be defective***." (Dkt. 7-2 at p. 6.) In other words, Volvo is only obligated to repair or replace parts that it acknowledges are defective; if it refuses to acknowledge a defect (as it has done with Plaintiff in this case,) the warranty imposes no obligations on Volvo whatsoever. The fact that Volvo premised its warranty obligation on its unilateral decision as to whether it will acknowledge the defect, makes it substantively unconscionable.

Plaintiff also sufficiently alleged procedural unconscionability by alleging that "Plaintiff had no meaningful choice" and that "a gross disparity in bargaining power existed between Volvo and Plaintiff." (*Id*. at ¶¶ 91, 99, and 100.) It is undisputed that Volvo's warranties are pre-printed documents that are drafted by Volvo and are not subject to negotiation.

## IV.   PLAINTIFF ADEQUATELY PLEADS FRAUD AND MEETS RULE 9(B) STANDARD

### A.   Plaintiff Satisfies Heightened Pleading Standard

#### 1.   Plaintiff Alleges Sufficient Detail as to Volvo's Alleged Misrepresentations under Rule 9(b)

Volvo complains that Plaintiff failed to identify sufficient details about the false statements Volvo made about its 2007 D13 engines in Paragraph 23 of Plaintiff's Complaint. (Dkt. 7-3 at 15.) However, these were just background statements about the 2007 engine, which is not at issue in this case. Plaintiff made specific allegations about false statements regarding the 2016 trucks at issue in this case. For example, Plaintiff alleged that Christina Ameigh made false representations about the vehicles at a meeting with OTSI's president and Buffalo Truck

Center's owner (Tom Kurg). (Dkt. 1 at ¶¶32 - 33.) Defendant's only complaint about the specificity of this allegation is that "Plaintiff fails to allege when or where this meeting took place." However, the context of the allegations are clear that it took place at OTSI's office (which is in Rochester, New York) during 2014, after the meeting with Ken Nye at OTSI's office, and before the September 2014 factory tour. (*Id*. at ¶¶32 - 33.)

Defendant also complains about Plaintiff's allegation about false statements made by "unidentified engineers" because Plaintiff fails to name them. However, Plaintiff sufficiently identified them by stating that they were Volvo engineers from Volvo's engineering team who spoke to Kirik during his September 2014 tour of Volvo trucks' factory in Dublin, Virginia, and its Uptime Center in Greensboro, S. Carolina, when Mr. Kirik was with Ken Nye, Christina Ameigh, Tom Krug, Jason Spence (Volvo trucks' long haul marketing product manager), and James Beichner (Volvo trucks' District Sales Manager) . (*Id*. at ¶¶33 - 34.) Plaintiff has sufficiently identified these individuals so that Volvo can identify them, even though Plaintiff does not know their names. The Complaint further stated that Nye and Ameigh falsely told Kirik that the D13 engines could meet OTSI's requirements during that September 2014 meeting.

### 2.    Plaintiff Alleges Facts Raising a Strong Inference of Fraudulent Intent in Support of Its Fraudulent Omission or Concealment Claim

Volvo concedes that Plaintiff is not obligated to specify the time or place of alleged omissions, but complains that the Complaint utterly fails to allege what Volvo allegedly obtained through the fraud. (Dkt. 7-3 at 16.) To the contrary, Plaintiff alleged that Volvo obtained a specific sale of 24 trucks. (Dkt. 1 at ¶35.)

Volvo relies heavily on *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540 (S.D.N.Y. 2016). However, the Complaint satisfies the test set forth by *Catalano*. Plaintiff identifies the persons who were responsible for the failure to disclose including Christina Ameigh, (Volvo's

regional fleet sales manager); Jason Spence (Volvo trucks' long haul marketing product manager); James Beichner (Volvo trucks' District Sales Manager); and a few of Volvo trucks' engineers. (Dkt. 1 at ¶¶33-35.) Plaintiff describes the omissions, including that Volvo knew the engines had defects and hid that fact from OTSI. (¶¶ 49, 62, 85, 91, 103-105, 116, 117.) Plaintiff describes the context of the omissions and the manner in which they misled Plaintiff. (*Id*.) Plaintiff explains that, through this fraud, Volvo was able to sell 24 trucks. (*Id.* at ¶ 35.)

These allegations give rise to a strong inference of fraudulent intent because Defendant had both motive and opportunity to commit fraud, in that they knew OTSI's president was looking to buy a large fleet of vehicles and needed reassurance regarding the engine before he would decide to make the purchase. These allegations also constitute strong circumstantial evidence of conscious misbehavior or recklessness. They explain Volvo's specific motive to commit fraud, which goes beyond a generalized motive to increase sales or profits, and rather was a specific motive to obtain a specific sale of 24 trucks to OTSI.

These facts constitute strong circumstantial evidence of conscious misbehavior or recklessness. These allegations explain Volvo's specific motive to commit fraud and a clear duty to disclose, and go beyond a generalized motive to increase sales found to be insufficient in *Catalano*. The allegations also go beyond a simple allegation that Volvo was aware of the defect. Plaintiff sufficiently alleged the type of highly unreasonable conduct that would support a strong inference of intent because the defect was known to Volvo and its employees, but not known to OTSI, thus making the material facts exclusively known to Volvo.

### B.    Plaintiff Adequately Alleges Volvo's Knowledge of the Defect at the Time the Alleged Statements or Omissions Were Made

Volvo argues that Plaintiff cannot demonstrate Volvo's knowledge of the defect *before* Plaintiff's purchase and that the allegations concerning other customer complaints to Volvo and

in public online postings give no indication of when these complaints or postings were made, making it impossible to tell when Volvo allegedly had reason to know of the defect, or even whether the complaints refer to the same D13 engine sold to plaintiff or one of the many redesigns that Volvo allegedly made.

To the contrary, Plaintiff alleged that "Volvo knew of the problem at the time [Plaintiff] purchased the trucks." (Dkt. 1 at 54.) As evidence of this, Plaintiff alleged that "Volvo changed the design, introducing a new fuel rail system, *a few months after* OTSI's purchase." *Id*. (Dkt. 1 at ¶¶ 54, 62) (emphasis added). A reasonable inference drawn in Plaintiff's favor[1] from this allegation is that Volvo knew of the engine defect *before* OTSI's purchase because it would be impossible for Volvo to learn of the engine defect after OTSI's purchase, then redesign, manufacture, test, and begin selling a new design all within a few months; major vehicle manufacturers do not take all these steps within a few months.

Plaintiff also alleged that Volvo knew of the Engine Defect "*soon after* trucks including the Engine Defect began to be sold, as evidenced by the huge number of vehicles being brought to Volvo dealerships for repair, and the huge number of repeat visits from truck owners evidencing that Volvo's standard repair procedures were not adequately repairing the Engine Defect." (Dkt. 1 at ¶85.) Because OTSI did not purchase the first group of trucks that rolled off the assembly line, and the defects manifested immediately, a reasonable inference drawn in Plaintiff's favor from this allegation is that Volvo's knowledge soon after the trucks began to be sold was before the sale of trucks to OTSI.

---

[1] In reviewing a motion to dismiss, a court must construe the complaint liberally, "accepting

**V.      Plaintiff's Claim for Breach of the Implied Duty of Good Faith and Fair Dealing Is Not Duplicative of Plaintiff's Express Warranty Claim**

Volvo argues that Plaintiff's claim for breach of the implied duty of good faith and fair dealing should be dismissed because it is duplicative of Plaintiff's express warranty claim. (Dkt. 7-3 at 20.) However, an implied covenant claim is not duplicative of a warranty claim, even when both claims factually overlap, if the implied covenant claim relies on additional facts or seeks additional damages. *See Ret. Bd. of Policemen's Ann. & Ben. Fund v. Bank of New York Mellon*, No. 11-cv-5459, 2014 U.S. Dist. LEXIS 105805 at *10 (S.D.N.Y. July 30, 2014); *Rosa v. TCC Communs., Inc.*, No. 15cv1665, 2016 U.S. Dist. LEXIS 575, at *11-12 (S.D.N.Y. 2016); *Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank*, 552 Fed. Appx. 13, 16-17 (2d Cir. Jan. 9, 2014).

In the present case, Volvo's express warranty covers only defects in material and workmanship and is limited to its obligation to repair or replace parts for specified time and mileage limits. (Dkt. 7-3 at 6, 11, 20.) Plaintiff's implied warranty claim overlaps with its express warranty claim but goes beyond it, both by relying on additional facts (beyond defects in material and workmanship) and by seeking additional damages (beyond the obligation to repair or replace.) Plaintiff's implied warranty claim is based on facts (that the vehicle did not just have defects in materials and workmanship, but was not merchantable) that are not covered by the express warranty, and seeks damages that are not available under the express warranty (including inflated price injury, recall, restitution, warranty extension, curative notice, and declaratory relief.) (Dkt. 1 at ¶¶96, 125, 126 and Section VIII.)

**VI.      Plaintiff Alleges Consumer Oriented Conduct Within the Ambit of GBL § 349**

New York General Business Law §349's "consumer orientation does not preclude its application to disputes between businesses . . ." *Shema Kolainu-Hear Our Voices v.*

*ProviderSoft, LLC*, 832 F. Supp. 2d 194, 204 (E.D.N.Y. 2010) (citing *Cruz v. NYNEX Info. Res.*, 263 A.D.2d 285, 290, 703 N.Y.S.2d 103, 107 (1st Dep't 2000)). "[C]ourts have permitted an expansive view of the types of plaintiffs who may have standing under sections 349 and 350." *Tropical Sails Corp. v. Yext, Inc.*, 2015 U.S. Dist. LEXIS 64722, at *8 (S.D.N.Y. 2015). *See Dollar Phone Corp. v. Dun & Bradstreet Corp.*, No. 09-3645, 2010 U.S. Dist. LEXIS 134417, 2010 WL 5313737, at *3 (E.D.N.Y. Sept. 2, 2010) ("A business may bring a § 349 claim if it is harmed by consumer-oriented conduct." (quoting *Spirit Locker, Inc. v. EVO Direct, LLC*, 696 F. Supp. 2d 296, 302 (E.D.N.Y. 2010).)

The key consideration for application of a §349 claim is that the dispute not be a private dispute over a transaction "which is unique to" the parties in the litigation. *Spirit Locker*, 696 F. Supp. 2d at 301. The *Spirit Locker* court cited *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank N.A.*, 85 N.Y.2d 20, 647 N.E.2d 741, 623 N.Y.S.2d 529 (1995), which permitted a §349 claim to be brought by a pension fund (which was clearly not a consumer) because the claim alleged material misrepresentations and omissions concerning the terms of savings accounts, where the defendant had dealt with the plaintiffs' representative "as any customer entering the bank to open a savings account, furnishing the [plaintiffs] with standard documents presented to customers upon the opening of accounts." *Id*. citing *Oswego* 85 N.Y.2d at 26. "Since the account openings were not unique to these two parties, nor were they private in nature or a single shot transaction, the consumer-oriented act prong of a § 349 claim was satisfied." *Id*. (internal citations and quotations omitted). Similarly, the sale of these trucks to Plaintiff involved the same defective engines and the same standard warranties as were present in the sale of Volvo trucks to any other customer.

## VII.    Plaintiff's Claim are Not Barred by Limitations

Plaintiff's claims are not barred by limitations due to equitable tolling and/or equitable estoppel. "Under New York law, the doctrines of equitable tolling or equitable estoppel may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) (internal quotation marks omitted). "Equitable tolling applies where a defendant's fraudulent conduct results in a plaintiff's lack of knowledge of a cause of action." *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 462 (S.D.N.Y. 2014). In the present case, Volvo wrongfully concealed material facts, which prevented Plaintiff's discovery of the nature of the claim and Plaintiff exercised due diligence in pursuing the discovery of the claim during the period limitations was tolled. Alternatively, if the court finds that Plaintiff knew of its cause of action, the limitations period should be tolled due to Volvo's misconduct causing Plaintiff to delay in bringing suit. Should the Court be inclined to dismiss based on limitations, Plaintiff asks that the dismissal be with leave to amend, to add additional allegations supporting Plaintiff's claims for equitable estoppel and equitable tolling

Dated:  June 17, 2019

Respectfully submitted,

/s/ Cory S. Fein
Cory S. Fein (Pro Hac Vice)
E-mail: cory@coryfeinlaw.com
CORY FEIN LAW FIRM
712 Main St., #800
Houston, TX 77002
Telephone: (281) 254-7717
Facsimile: (530) 748-0601

David Rothenberg, Esq.
ROTHENBERG LAW
45 Exchange Street, Suite 800
Rochester, New York 14614
Tel:  (585) 232-1946
Fax:  (585) 232-4746
Email:  david@rothenberglawyers.com

*Attorneys for Plaintiff*