UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ORANGE TRANSPORTATION SERVICES, INC.,

                                 Plaintiff,

                                                       Case # 19-CV-6289-FPG

v.

                                                       DECISION AND ORDER

VOLVO GROUP NORTH AMERICA, LLC,

                                 Defendant.

## INTRODUCTION

Plaintiff Orange Transportation Services, Inc. brought this action against Defendant Volvo Group North America, LLC for breach of express warranty, breach of the implied warranty of merchantability, breach of the covenant of good faith and fair dealing, fraud, and violation of New York consumer protection law. ECF No. 1. Now before the court is Volvo's motion to dismiss Orange Transportation's Complaint pursuant to Federal Rules of Civil Procedure ("Rules") 9(b) and 12(b)(6). ECF No. 7; ECF No. 7-3 at 1. Volvo's motion to dismiss Orange Transportation's Complaint, ECF No. 7, is GRANTED.

## PROCEDURAL HISTORY

In a Decision and Order dated January 15, 2020, this Court addressed a portion of Volvo's motion to dismiss. ECF No. 17. The Court held that Orange Transportation lacked standing to assert claims with respect to semi-trucks that it did not purchase and that it did not adequately plead diversity jurisdiction. *Id.* The Court accordingly granted Volvo's motion to dismiss with respect to the trucks Orange Transportation did not purchase, ordered Orange Transportation to show cause as to why the remainder of its Complaint should not be dismissed for lack of diversity jurisdiction, and held the remainder of Volvo's motion in abeyance. *Id.* at 12–13. Orange

Transportation filed a response to the Court's order that clarified the citizenship of the parties and addressed the Court's concerns regarding diversity. ECF No. 18. Volvo does not dispute the existence of diversity jurisdiction. ECF No. 19. The Court now turns to the remainder of Volvo's motion to dismiss.

## RELEVANT FACTS[1]

Orange Transportation hauls freight long distances. ECF No. 1 ¶ 34. Volvo manufactures, markets, and sells "Class 8" trucks ("semi-trucks") in the United States. *Id.* ¶ 18. It is currently the largest semi-truck manufacturer in North America. *Id.* ¶ 19.

Orange Transportation began the process of purchasing a new fleet of semi-trucks in 2014. *Id.* ¶ 32. Orange Transportation's vice president, Tony Kirik, contacted Ken Nye, a representative of Buffalo Truck Center, Inc. *Id.* Kirik met with Nye and the owner of Buffalo Truck, Tom Kurg, to discuss the purchase, but expressed skepticism regarding Volvo trucks because of Volvo's D13 engine ("D13 engine"), which he understood experienced frequent injector failures and was less powerful than competing engines. *Id.* After an unspecified number of meetings, Volvo's regional fleet sales manager, Christina Ameigh, was invited to participate in a meeting. *Id.* ¶ 33. Ameigh told Kirik that the D13 engine was performing "very well for Volvo's fleet customers" and encouraged Kirik to tour Volvo's factory and its customer service center. *Id.*

In September 2014, Kirik toured Volvo's facilities and met with Volvo's engineering team to discuss Orange Transportation's specifications. *Id.* Kirik explained that he had concerns about issues with Volvo's prior model-year engines and raised concerns regarding the power of the D13 engine. *Id.* ¶ 34. Kirik explained that Orange Transportation hauls 45,000-pound loads cross country. *Id.* Nye and Ameigh verified that the D13 engine could meet Orange Transportation's

---

[1] The Court takes the following allegations from Orange Transportation's Complaint, ECF No. 1, and accepts them as true to evaluate Volvo's motion to dismiss.

requirements, and Volvo's engineers touted the improvements Volvo was working on implementing. *Id.*

Following these meetings, Orange Transportation purchased a number of Volvo semi-trucks from Buffalo Truck on October 9, 2014. *Id.* ¶ 35. The semi-trucks were delivered to Orange Transportation in early 2015; the last unit was delivered on April 8, 2015. *Id.* ¶ 35. The semi-trucks were all powered by the D13 engine. *Id.* Orange Transportation claims that the D13 engines in these trucks suffered from a defect relating to its exhaust gas recirculation configuration, turbochargers, injectors, and other related components. *Id.* ¶ 22, 24, 26. Orange Transportation claims the defect resulted in significant malfunctions and lost revenue. *Id.* ¶¶ 1, 27, 29, 30.

Orange Transportation started experiencing problems with the trucks immediately. *Id.* ¶ 36. Orange Transportation's Complaint details numerous problems experienced over the course of the next three years, *id.* ¶¶ 37, 40–41, 43, 45–46, 53, 57–58, 60, until Orange Transportation sold all but one of the trucks (that truck was involved in an accident) *id.* ¶¶ 71–74. Most of the trucks were sold in June 2018. *Id.* ¶ 73.

## LEGAL STANDARD

Rule 12(b)(6) provides that a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion, a court must "draw all reasonable inferences in Plaintiff['s] favor." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The

application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## DISCUSSION

Orange Transportation asserts claims against Volvo for (1) breach of express warranty, (2) breach of implied warranty of merchantability, (3) breach of the covenant of good faith and fair dealing, (4) common law fraud, and (5) violation of New York consumer protection law. ECF No. 1 ¶¶ 77–127. Volvo argues that each of Orange Transportation's claims should be dismissed.

## I.    Express Warranty

Volvo argues that Orange Transportation's claims for breach of express warranty must be dismissed because the warranties in question only cover defects in materials and workmanship and do not cover the type of defect Orange Transportation has alleged, *i.e.*, a design defect. ECF No. 7-3 at 6–8. Orange Transportation does not dispute that the express warranties in question do not cover design defects. ECF No. 15 at 2–3. Instead, Orange Transportation argues that it has alleged defects in materials and workmanship. *Id.* The Court agrees with Volvo.

Under New York law,[2] manufacturing defects are distinct from design defects. *See McCarthy v. Olin Corp.*, 119 F.3d 148, 154–55 (2d Cir. 1997). "[A] warranty that protects against defects in materials or workmanship covers manufacturing defects, but not design defects." *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 554 (S.D.N.Y. 2016) (collecting cases). To assert a manufacturing defect, "the plaintiff must show that a specific product unit was defective as a result of some mishap in the manufacturing process itself, improper workmanship, or because

---

[2] The parties assume that New York law applies for purposes of Volvo's motion, which is "sufficient to establish the applicable choice of law." *Golden Pac. Bancorp v. F.D.I.C.*, 273 F.3d 509, 514 n.4 (2d Cir. 2001).

defective materials were used in construction." *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 85 (S.D.N.Y. 2001) (quotation omitted).

"Because a manufacturing defect exists when the unit in question deviates in quality and other performance standards from all of the other identical units, a claim devoid of allegations that a particular unit differed when compared to others in the same product line will be dismissed." *Guariglia v. Procter & Gamble Co.*, No. 15-CV-4307, 2018 WL 1335356, at *5 (E.D.N.Y. Mar. 14, 2018) (citation and quotation omitted). "In other words, a manufacturing flaw exists when the unit in question deviates in quality and other performance standards from all of the other identical units." *Miccio v. Conagra Foods, Inc.*, 224 F. Supp. 3d 200, 204 (W.D.N.Y. 2016) (quotation omitted). The plaintiff must do more than make "offhand references to manufacturing defects," but "[the] plaintiff need not . . . plead specific facts about the manufacturing process, improper workmanship, or use of defective materials at the motion to dismiss stage if doing so would require technical or scientific knowledge about the inner workings of the product." *Guariglia*, 2018 WL 1335356, at *5.

Volvo warranted the engines in question "to be free from defects in material and workmanship under normal use." ECF No. 1 ¶ 79. Orange Transportation does not dispute that the express warranty applies only to manufacturing defects but argues that it alleges several specific manufacturing defects.[3] ECF No. 15 at 2–3.

Orange Transportation alleges the semi-truck's D13 engines have a common defect: excess heat in the pistons causes stem valves to fracture. ECF No. 1 ¶¶ 40, 54, 63. It claims that the excess heat is caused by "injector/s injecting excessive diesel fuel, requiring pistons to work at higher

---

[3] Orange Transportation never specifically ties these issues to defects in materials or workmanship in its Complaint, and it may not amend its Complaint through its brief. *See O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989) ("It is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss.").

temperatures and pressures th[a]n the chamber is able to withstand." *Id.* ¶ 63. This allegedly leads to a common pattern of deterioration of injector cup sealant, coolant leaks, valves dropping or fracturing, and failure of other weak parts. *Id.* ¶¶ 54, 64, 65. Orange Transportation is clearly alleging a defect common to all of the engines in question. Orange Transportation does not allege it is a defect specific to an individual engine or certain engines, and it even alleges that the issue was supposed to be resolved by a new fuel system (*i.e.*, a new design) on numerous occasions. *Id.* ¶¶ 40, 49, 54, 60, 62.

Orange Transportation goes on to identify several issues experienced by specific truck engines, but these issues are consistent with the problems it attributes to the design issue. Specifically, Orange Transportation claims that unit 4058[4] suffered a cracked piston liner caused by an exhaust valve dropping, but notes that the unit showed "the same type of engine failure as [the] other units," that "other trucking companies [were] experiencing the same failures," and that the technician who worked on the truck was seeing the same type of "engine failures a couple times per month." *Id.* ¶ 60. Further, Orange Transportation claims that unit 564 and unit 4058 both experienced injector cup issues, but, in those very same allegations, Orange Transportation notes that a representative for Buffalo Truck and the service advisor for another third party attributed these failures to various Volvo design choices. *Id.* ¶¶ 37, 46. Orange Transportation alleges that both the cups and the tool used to install them were updated by Volvo. *Id.* Further, a service advisor allegedly explained that "a substantial number of trucks" were experiencing injector cup issues. *Id.* ¶ 40. Orange Transportation's allegations do not speak to individualized injector cup failures,

---

[4] As the Court has previously held, Orange Transportation does not have standing to bring claims with respect to units that it did not purchase. ECF No. 17. Because the Court finds that Orange Transportation's claims must be dismissed, it does not distinguish between trucks that were purchased by Orange Transportation and those that were not for purposes of this Decision and Order, but any claims with respect to trucks that Orange Transportation did not purchase remain dismissed without prejudice. *Id.* at 12.

but rather to systemic injector cup issues caused by faulty design. *Catalano*, 167 F. Supp. 3d at 555 (holding that similar allegations, taken together, "strongly suggest a defect in the . . . [v]ehicles' design, rather than a mistake in the manufacturing process itself").

Orange Transportation claims *Marshall v. Hyundai Motor Am.* supports its position. 51 F. Supp. 3d 451 (S.D.N.Y. 2014). In that case, the plaintiffs attributed multiple defects to material and workmanship issues and the court found that the cause of the defects could not be determined absent information solely in the possession of the defendant. *Id.* at 467. The plaintiff "made sufficiently broad allegations to encompass defects in material and workmanship." *Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 314 (N.D.N.Y. 2019). In this case, Orange Transportation's allegations cannot be reasonably read to encompass defects in material or workmanship. Orange Transportation does not mince words; it attributes the defects in question to errors in design. ECF No. 1 ¶¶ 2, 7, 54–55, 62, 103 (specifically referring to "design" issues).

Orange Transportation further argues that it has not asserted class claims on behalf of all purchasers of semi-trucks with the D13 engines and that it is accordingly asserting individualized manufacturing defects. The important consideration is not whether plaintiff has asserted class or individual allegations[5] but rather whether plaintiff has alleged specific deviations from design standards for particular units rather than flaws consistent across relevant units. *Miccio*, 224 F. Supp. 3d at 204. Whether a claim is characterized as a class action is irrelevant. Orange Transportation consistently alleges defects common to the D13 engine generally. *E.g.*, ECF No. 1 ¶ 1. Orange Transportation's "claim is more appropriately characterized as a design defect" because it relies on allegations regarding defects that "are common to an entire class of vehicles

---

[5] This argument is particularly weak in this case given that Orange Transportation has asserted class-like claims. It originally asserted claims with respect to semi-trucks that it did not purchase. ECF No. 17. And Orange Transportation alleges that the defects in the D13 engine are experienced by other trucking companies. *E.g.*, ECF No. 1 ¶ 60.

based on their design." *Haag v. Hyundai Motor Am.*, 294 F. Supp. 3d 102, 105 (W.D.N.Y. 2018). Accordingly, Volvo's Motion to Dismiss Orange Transportation's express warranty claims is GRANTED.

## II. Implied Warranty of Merchantability

Volvo argues that Orange Transportation's claims for breach of the implied warranty of merchantability are barred by the statute of limitations.[6] ECF No. 7-3 at 11–13. Orange Transportation argues that the statute of limitations should be tolled by equitable tolling or equitable estoppel. ECF No. 15 at 10. Equitable tolling/estoppel is not warranted.

The parties do not dispute that this matter is governed by New York's Uniform Commercial Code ("U.C.C."), which provides a four-year limitations period for warranty claims. N.Y. U.C.C. § 2-725(1); ECF No. 7-3 at 11; ECF No. 15 at 10. The U.C.C. further provides that the "cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach" and that "[a] breach of warranty occurs when tender of delivery is made." N.Y. U.C.C. § 2-725(2); *Orlando v. Novurania of Am., Inc.*, 162 F. Supp. 2d 220, 223 (S.D.N.Y. 2001). "The date of tender rule for determining the accrual date for warranty actions is quite rigid." *Orlando*, 162 F. Supp. 2d at 223 (collecting cases). Although Section 2-725(2) contains an exception for express warranties that "explicitly extend[] to future performance," the exception is inapplicable to implied warranties. *Id.* at 224 (quoting N.Y. U.C.C. § 2-725(2)); *Zielinski v. Alfa-Laval, Inc.*, No. 86-CV-296, 1989 WL 29482, at *3 (W.D.N.Y. Mar. 27, 1989). In short, "the plain language of the statute makes clear that the statute of limitations generally begins to run on tender of delivery, and that lack of knowledge of a defect has no effect on the running of the limitations

---

[6] Because the Court finds that Orange Transportation's claims are barred by the statute of limitations, it does not address Volvo's argument that Orange Transportation waived its implied warranty claims.

period." *De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274, 317–18 (S.D.N.Y. 2013) (quotation omitted) (collecting cases).

Here, the last truck was delivered on April 8, 2015. ECF No. 1 ¶ 35. Orange Transportation accordingly had until April 8, 2019 to bring suit, but it did not file its Complaint until April 18, 2019. ECF No. 1. Orange Transportation does not dispute that the statute of limitations bars its implied warranty claims. ECF No. 15 at 10. Instead, Orange Transportation argues that its claims are saved by equitable tolling/estoppel. *Id.* Specifically, Orange Transportation claims, in its brief, that Volvo concealed material facts, which prevented Orange Transportation from discovering its claims, or alternatively, Volvo engaged in misconduct that caused Orange Transportation to delay its suit. *Id.*

Some courts have held that equitable tolling can never apply to implied warranty claims. *Catalano*, 167 F. Supp. 3d at 558; *Zielinski*, 1989 WL 29482, at *4 (declining to "engraft" an equitable doctrine in to the U.C.C.'s statutory language). Other courts have applied an equitable tolling analysis in cases involving implied warranty claims. *Jackson v. Eddy's LI RV Ctr., Inc.*, 845 F. Supp. 2d 523, 531–33 (E.D.N.Y. 2012) (noting that there can be no delayed accrual for future performance of any implied warranty but applying equitable tolling analysis to implied and express warranty claims); *Chizniak v. CertainTeed Corp.*, No. 17-CV-1075, 2020 WL 495129, at *5–8 (N.D.N.Y. Jan. 30, 2020) (same). There is no need to resolve this issue here. Orange Transportation has failed to demonstrate its entitlement to equitable tolling.

Generally, "equitable tolling is only appropriate in rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his rights." *Zerilli– Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (alterations, citations, and quotations omitted). Under New York law, equitable tolling is only available if "plaintiff was

induced by fraud, misrepresentations or deception to refrain from filing a timely action." *Woods v. Maytag Co.*, No. 10-CV-559, 2010 WL 4314313, at *4 (E.D.N.Y. Nov. 2, 2010) (quoting *Simcuski v. Saeli*, 377 N.E.2d 713, 716 (N.Y. 1978)).

"Generalized or conclusory allegations of fraudulent concealment are not sufficient to toll a statute of limitations." *De Sole*, 974 F. Supp. 2d at 319. "For equitable tolling to apply, a plaintiff may not rely on the same act that forms the basis for the claim—the later fraudulent misrepresentation must be for the purpose of concealing the former tort." *Id.* "Equitable tolling 'is triggered by some conduct on the part of the defendant after the initial wrongdoing; mere silence or failure to disclose the wrongdoing is insufficient.'" *Id.* (quoting *Ross v. Louise Wise Servs., Inc.*, 868 N.E.2d 189, 198 (N.Y. 2007)).

Plaintiff's due diligence is also "an essential element of equitable relief." *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) (citing *Doe v. Holy See (State of Vatican City)*, 793 N.Y.S.2d 565, 569 (App. Div. 2005)). "The plaintiff bears the burden of showing that the action was brought within a reasonable period of time after the facts giving rise to the equitable tolling or equitable estoppel claim 'have ceased to be operational.'" *Id.* (quoting *Doe*, 793 N.Y.S.2d at 569). "If a plaintiff is on notice of potential wrongdoing but takes no steps to investigate further, equitable estoppel does not apply because of a failure of diligence." *Marshall*, 51 F. Supp. 3d at 463 (quotation omitted); *see Statler v. Dell, Inc.*, 775 F. Supp. 2d 474, 483 (E.D.N.Y. 2011) ("[T]olling can apply only when a plaintiff has acted with reasonable diligence and can show extraordinary circumstances that justify the requested toll.").

Courts regularly find that the manifestation of a defect triggers a duty to investigate further. *Marshall*, 51 F. Supp. 3d at 464 ("Plaintiffs were apprised of sufficient facts to put them on notice that reasonable diligence was required, yet do not claim to have taken action between the time

their brakes required repair and the filing of this action . . . ."); *Woods*, 2010 WL 4314313, at *4 ("[Plaintiff] learned of the alleged defect . . . when the malfunction and explosion occurred— nearly two years before he commenced this action and more than a year before the limitations period expired. . . . Plaintiff had a sufficient period of time to investigate and commence an action based on the warranty prior to the expiration of the applicable statute of limitations."); *Jackson*, 845 F. Supp. 2d at 533 (refusing to apply equitable tolling where "alleged years of repairs were certainly enough to put Plaintiff under a duty to make inquiry and ascertain all the relevant facts prior to the expiration of the applicable Statute of Limitations" (quotation omitted)); *see also Four Seasons Solar Prods. Corp. v. Southwall Techs., Inc.*, 100 F. App'x 12, 13 (2d Cir. 2004) (summary order) ("[W]e find that had the plaintiff exercised due diligence, it would have hired an expert upon discovery of the injury and, thus, the injury and its cause would have been discovered before March, 1991.").

Here, Orange Transportation alleges, in no uncertain terms, that it began experiencing problems with the semi-trucks immediately, ECF No. 1 ¶ 36, and Orange Transportation specifically details numerous problems that allegedly occurred in early 2016. *Id.* ¶ 37. By November 4, 2016, Orange Transportation's allegations make clear that it knew the engine's "injectors [we]re clearly defective and [we]re failing on all . . . units." *Id.* ¶ 41. Orange Transportation clearly had cause to investigate the defect long before the expiration of the statute of limitations.[7]

Orange Transportation even had over nine months between the time it sold most of the trucks and the expiration of the statute of limitations. *Id.* ¶ 73. It is completely unclear how Volvo's

---

[7] At minimum, Volvo's denials of warranty coverage beginning in June 2017 were nothing short of a flashing red warning signal that Orange Transportation should investigate the alleged defect. ECF No. 1 ¶ 44.

actions prevented Orange Transportation from bringing this action during the pendency of those nine months. The only actions by Volvo that could have caused Orange Transportation to delay relate to Volvo covering certain repairs and to negotiations between the parties regarding trading in the semi-trucks with the defective D13 engines for new semi-trucks with redesigned engines. *Id.* ¶¶ 37–45, 49–51, 54–55, 58, 60–61. But, "[t]he law is clear that attempts to repair a warrantied product, within the warranty period, do not toll the four year limitations period." *Jackson*, 845 F. Supp. 2d at 534 (collecting cases). Further, Orange Transportation has provided no explanation as to why it would delay filing this suit for an additional nine months after its trade-in negotiations with Volvo failed and it sold the trucks to a third party.

Even setting aside Orange Transportation's failure to exercise due diligence, Orange Transportation has not alleged facts to support equitable tolling. Orange Transportation only makes conclusory allegations that Volvo knowingly and actively concealed the alleged engine defect. ECF No. 1 ¶ 16.[8] Such conclusory allegations are insufficient. *De Sole*, 974 F. Supp. 2d at 319. Accordingly, Orange Transportation has not provided any basis to toll the statute of limitations, and Volvo's Motion to Dismiss Orange Transportation's implied warranty of merchantability claims is GRANTED.

## III.   Duty of Good Faith and Fair Dealing

Volvo argues that Orange Transportation's claims for breach of the implied covenant of good faith and fair dealing must be dismissed as duplicative of its express warranty claims. ECF No. 7-3 at 20. Orange Transportation alleges that its implied covenant claims go beyond the defects

---

[8] Orange Transportation also claims that Volvo was under a continuing duty to disclose information regarding the defect. ECF No. 1 ¶ 17. Orange Transportation offers no support for this dubious theory. *See Chizniak*, 2020 WL 495129, at *8 ("[S]ubsequent fraudulent action is required before equitable estoppel or tolling applies").

in material and workmanship covered by its express warranty claims. ECF No. 15 at 8. The Court agrees with Volvo.

Under New York law, "the covenant of good faith and fair dealing is implicit in every contract," but "it cannot be construed so broadly as effectively to nullify other express terms of a contract, or to create independent contractual rights." *Consol. Edison, Inc. v. Ne. Utils.*, 426 F.3d 524, 529 (2d Cir. 2005) (quoting *Fesseha v. TD Waterhouse Inv'r Servs.*, 761 N.Y.S.2d 22, 23 (App. Div. 2003)); *see also* N.Y. U.C.C. § 1–304 cmt. 1 ("This section does not support an independent cause of action for failure to perform or enforce in good faith. . . . [T]he doctrine of good faith merely directs a court towards interpreting contracts within the commercial context in which they are created, performed, and enforced, and does not create a separate duty of fairness and reasonableness which can be independently breached."). "For a complaint to state a cause of action alleging breach of an implied covenant of good faith and fair dealing, the plaintiff must allege facts which tend to show that the defendant sought to prevent performance of the contract or to withhold its benefits from the plaintiff." *Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank*, 552 F. App'x 13, 16 (2d Cir. 2014) (summary order) (quoting *Aventine Inv. Mgmt., Inc. v. Can. Imperial Bank of Commerce*, 697 N.Y.S.2d 128, 130 (App. Div. 1999)). "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002).

The Court finds that Orange Transportation's implied covenant claims are duplicative of its express warranty claims. Orange Transportation has simply asserted that Volvo breached the implied covenant by failing to notify it of the engine defect and failing to fully and properly repair the defect. ECF No. 1 ¶ 108. These allegations are not distinct from its allegations that Volvo

breached the express warranty by failing to repair or replace the defective engines and intentionally failing to notify Orange Transportation of the defect. *Id.* ¶¶ 83, 86. These allegations are accordingly duplicative. *See Sauer v. Xerox Corp.*, 95 F. Supp. 2d 125, 132 (W.D.N.Y. 2000) ("I see no difference between the factual underpinnings of Xerox's breach of contract claims and its claim for breach of the implied covenant of good faith and fair dealing. Indeed, the section of Xerox's memorandum of law discussing the latter claim mostly simply repeats and paraphrases its prior allegations regarding the contract claims.").

Even reading the Complaint very liberally and construing the failure to notify claim as specific to the implied covenant, Orange Transportation has not articulated how Volvo's failure to notify it of a defect that, as the Court has already determined, is not covered by the express warranty amounted "to prevent[ing] performance of the contract or to withhold[ing] its benefits from" Orange Transportation. *Capmark Bank*, 552 F. App'x at 16 (quotation omitted); *see also Violet Realty, Inc. v. Affiliated FM Ins. Co.*, 267 F. Supp. 3d 384, 388 (W.D.N.Y. 2017) ("[T]he covenant of good faith and fair dealing is breached when a party acts in a manner that, *although not expressly forbidden by any contractual provision*, would deprive the other party of the right to receive the benefits under the agreement." (emphasis in original) (quotation omitted)); *Ferguson v. Lion Holding, Inc.*, 478 F. Supp. 2d 455, 479 (S.D.N.Y. 2007) (noting that the implied covenant does not "enlarge or create new substantive rights between parties"). In other words, Orange Transportation has failed to plausibly explain how any conduct by Volvo deprived it of benefits due under the express warranty. *See M/A-COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990) ("Integral to a finding of a breach of the implied covenant is a party's action that directly violates an obligation that may be presumed to have been intended by the parties.").

The cases cited by Orange Transportation do not support its position. In both cases, plaintiffs alleged specific acts by defendants that undermined plaintiffs' ability to receive benefits they were entitled to receive under the contracts and that required separate damages to remedy. *See Rosa v. TCC Commc'ns, Inc.*, No. 15-CV-1665, 2016 WL 67729, at *3 (S.D.N.Y. Jan. 5, 2016); *Ret. Bd. of Policemen's Annuity & Benefit Fund of Chi. v. Bank of N.Y. Mellon*, No. 11-CV-5459, 2014 WL 3858469, at *3–4 (S.D.N.Y. July 30, 2014). Orange Transportation has failed to cite similar specific acts by Volvo here and has not specifically tied separate damages to its implied covenant claims. ECF No. 1. Accordingly, Volvo's Motion to Dismiss Orange Transportation's claims under the implied covenant of fair dealing is GRANTED.

## IV.  Common Law Fraud

Orange Transportation asserts claims for common law fraud based on "material misrepresentations and omissions" regarding the "design defect" in the D13 engines. ECF No. 1 ¶¶ 102–105. Volvo argues that Orange Transportation has failed to satisfy the heightened pleading requirements for fraud claims. ECF No. 7-3 at 14–17. The Court agrees.

Under New York law, a fraud claim has five elements: "(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006). If a plaintiff "seeks to show fraud by omission, it must prove additionally that the [defendant] had a duty to disclose the concealed fact." *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 181 (2d Cir. 2007).

Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To comply with Rule 9(b)'s

particularity requirement, a plaintiff must generally state the time, place, speaker, and content of the alleged misrepresentation. *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986). In other words, the "complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which . . . the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989). Although intent may be generally alleged under Rule 9(b), a complaint "must nonetheless allege facts which give rise to a strong inference" of defendant's fraudulent intent. *Id.* at 12. A plaintiff can establish a strong inference of fraudulent intent by alleging either: (a) "facts to show that defendant[] had both motive and opportunity to commit fraud[] or (b) . . . facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) (quotation omitted).

In *Catalano v. BMW of N. Am., LLC*, the court found that plaintiff failed to identify or explain the defendant's motive to commit fraud. 167 F. Supp. 3d 540, 560 (S.D.N.Y. 2016). The court held that it was insufficient to plead that defendant was acting "to increase sales/profits, a generalized motive that could be possessed by any corporate actor or director or officer." *Id.*

Similarly, here, Orange Transportation fails to identify or explain Volvo's motive. Orange Transportation alleges that Volvo is the largest semi-truck manufacturer in North America. ECF No. 1 ¶ 19. The prospect of Volvo increasing its sales by an additional twenty-four semi-trucks, *id.* ¶ 35, does not support Orange Transportation's allegation of fraudulent intent. *See Chill v. Gen. Elec. Co.*, 101 F.3d 263, 267–68 (2d Cir. 1996) (holding that GE's interest in justifying $1 billion investment in a subsidiary did not sufficiently demonstrate GE's motive to ignore signs of subsidiary's non-profitability). All manufacturers endeavor to increase their sales. If the possibility

of the largest semi-truck manufacturer in North America closing the sale of twenty-four semi-trucks could satisfy a plaintiff's obligation to plead motive, the scienter requirement would be rendered nugatory. *Id.* ("[S]uch a generalized motive, one which could be imputed to any publicly-owned, for-profit endeavor, is not sufficiently concrete for purposes of inferring scienter.").

The court in *Catalano* also found that the plaintiff failed to allege any circumstantial evidence of conscious misbehavior or recklessness. 167 F. Supp. 3d at 560–61. Plaintiff alleged that the defendant had knowledge of a defect and did not disclose the defect to consumers. *Id.* at 560. The court noted that "alleged reckless conduct must, at the least, be 'highly unreasonable' and represent 'an extreme departure from the standards of ordinary care.'" *Id.* (quoting *In re Carter–Wallace, Inc.*, 220 F.3d 36, 39 (2d Cir. 2000)). "Allegations showing a defendant's actual knowledge of material information coupled with a failure to disclose do not meet this standard where the facts do not indicate a 'clear duty to disclose.'" *Id.* (quoting *Kalnit v. Eichler*, 264 F.3d 131, 144 (2d Cir. 2001)). With respect to fraudulent misrepresentations, however, "[i]t is sufficient for [plaintiff] to allege defendants' knowledge of facts or access to information contradicting their public statements." *In re Carter–Wallace, Inc.*, 220 F.3d at 40 (quotation omitted).

In this case, like *Catalano*, Orange Transportation alleges that Volvo had knowledge of the defect and had a duty to disclose. ECF No. 1 ¶ 17. Orange Transportation's allegation, however, is conclusory and fails to explain why Volvo had a duty to disclose the defect. *Id.* A plaintiff may allege a duty arising from a defendant's "superior knowledge" by alleging that defendant: "(1) has superior knowledge, (2) that is not available to the other party by reasonable inquiry, and (3) the first party knows that the second party is acting on the basis of mistaken knowledge." *Naughright v. Weiss*, 826 F. Supp. 2d 676, 690–91 (S.D.N.Y. 2011) (citing *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 582 (2d Cir. 2005)). The Court assumes that Volvo had superior

knowledge of the defect for purposes of this motion[9] and that Volvo knew Orange Transportation was acting on the mistaken belief the D13 engine was free from the alleged defect.[10] This is insufficient, however, given that Orange Transportation has not plausibly alleged that the information available to Volvo was not otherwise available to Orange Transportation through reasonable inquiry. *See Bruno v. Zimmer, Inc.*, No. 15-CV-6129, 2017 WL 8793242, at *10 (E.D.N.Y. Aug. 11, 2017) ("[E]ven if the [second amended complaint] sufficiently alleges Defendants' superior knowledge, it does not adequately set forth facts that the information purportedly withheld was not otherwise available to Plaintiffs by reasonable inquiry.").

As part of its allegations regarding equitable tolling, Orange Transportation does allege that it could not have discovered the defect, ECF No. 1 ¶ 16, but its other allegations belie this conclusory allegation. Orange Transportation's vice president, Kirik, has purchased over 150 semi-trucks and was obviously aware of at least some issues with prior model-year D13 engines and Volvo's D16 engine given that he raised those concerns with Volvo's representatives. ECF No. ¶¶ 34, 69.

Further, Orange Transportation alleges that Volvo knew of the defect, in part, because of the "huge number" of semi-trucks that required repairs. *Id.* ¶ 85. Orange Transportation does not explain why it could not obtain information regarding such widespread failures throughout its industry. In fact, it appears that third parties that serviced Orange Transportation's semi-trucks

---

[9] Volvo argues that Orange Transportation failed to adequately allege Volvo's knowledge of the defect, ECF No. 7-3 at 17–19, but the Court expresses no opinion regarding this argument because it finds that Orange Transportation has not met the heightened pleading requirements of Rule 9(b).

[10] Orange Transportation alleges that its representative expressed concerns to Volvo representatives regarding issues with prior model-year D13 engines, specifically referencing issues with "the injectors and injector harnesses." ECF No. 1 ¶ 34. The Court does not resolve the question of whether such an allegation is sufficient to establish that Volvo knew Orange Transportation was purchasing the semi-trucks under the mistaken belief that the trucks were free from similar defects. *See Bruno v. Zimmer, Inc.*, No. 15-CV-6129, 2017 WL 8793242, at *10 (E.D.N.Y. Aug. 11, 2017).

were regularly willing to share their opinion regarding the reliability of Volvo's D13 engine and its alleged defect. *Id.* ¶¶ 37, 40, 46–47, 59–60; *see Oden v. Bos. Sci. Corp.*, 330 F. Supp. 3d 877, 900 (E.D.N.Y. 2018) ("Even assuming, arguendo, that the Complaint sufficiently alleges Defendant's superior knowledge, it does not adequately plead facts that the information purportedly withheld was not otherwise available to Plaintiff by reasonable inquiry via his physicians or other external sources of information."). Absent a duty to disclose, Orange Transportation has failed to establish fraudulent intent with respect to the alleged omission. *Catalano*, 167 F. Supp. 3d at 560–61.

To establish fraudulent intent with respect to Orange Transportation's misrepresentation claims, however, Orange Transportation need only allege Volvo's knowledge of facts or access to information contradicting its public statements. *In re Carter–Wallace, Inc.*, 220 F.3d at 42. Again, the Court assumes that Orange Transportation has adequately alleged Volvo's knowledge of the defect at the time of the sale. *See* ECF No. 1 ¶¶ 54, 62, 85. Orange Transportation has, however, failed to allege a specific misrepresentation regarding the alleged defect.

Orange Transportation only attributes three statements to Volvo's representatives prior to the sale: "that Volvo's D13 engine had been performing very well for Volvo's fleet customers;" that Volvo, as a leader in innovation, was working on and implementing many improvements; and "that the D13 engines could meet [Orange Transportation's] requirements," which presumably means the ability to haul "45,000-pound loads cross-country." *Id.* ¶¶ 33, 34; ECF No. 15 at 4–5. The first two statements are nothing more than puffery and are insufficient to support a fraud claim. *See Hampshire Equity Partners II, L.P. v. Teradyne, Inc.*, 159 F. App'x 317, 317–18 (summary order) ("The statements . . . are largely 'in the nature of opinion or puffery incapable of being proved true or false,' and accordingly cannot support a claim for fraud . . . ." (quoting *Bader v.*

*Siegel*, 657 N.Y.S.2d 28, 29 (App. Div. 1997))); *see also Nat'l Healthcare Affiliates, Inc. v. Liberty Mut. Ins. Co.*, No. 01-CV-798, 2008 WL 11362258, at *3–4 (W.D.N.Y. July 2, 2008) (holding that statements such as "extensive experience," "excellent reputation," and "consistent, high quality services" constituted puffery). Orange Transportation has also failed to plead with the requisite particularity by failing to explain why these statements are fraudulent. *Rombach v. Chang*, 355 F.3d 164, 175 (2d Cir. 2004).

The third statement presents a closer question.[11] Orange Transportation specifically alleges that its representative raised concerns about Volvo's "prior model-year D16 and D13 engines, especially the injectors and injector harnesses," but it makes no allegation Volvo's representatives acknowledged these issues or claimed such issues had been resolved for the, then current, D13 engine. ECF No. 1 ¶ 34. Instead, Orange Transportation alleges that Volvo verified the D13 engine was capable of meeting Orange Transportation's requirements (*i.e.*, hauling "45,000-pound loads cross-country"). *Id.* Although Orange Transportation alleges that the defect resulted in significant mechanical failures for virtually all of the purchased trucks, it also alleges that the semi-trucks operated for tens of thousands to hundreds of thousands of miles before suffering mechanical issues. *Id.* ¶¶ 37, 44–45, 54, 57–58, 61, 71. Orange Transportation does not explicitly allege that the engine was incapable of hauling "45,000-pound loads cross-country" and thus has failed to

---

[11] Volvo claims that Orange Transportation failed to satisfy Rule 9(b)'s particularity requirement by not alleging the exact date for the meeting in which this statement was made or where the meeting occurred. ECF No. 7-3 at 15–16. Orange Transportation, however, alleges that the meeting took place in September 2014, which is sufficiently specific. ECF No. 1 ¶ 33–34; *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 523 (S.D.N.Y. Sept. 29, 2015) (collecting cases). The Court expresses no opinion regarding whether Orange Transportation has provided sufficient information regarding the meeting to compensate for its failure to specify the exact meeting location. *See Reynolds*, 136 F. Supp. 3d at 523–24 ("The Court also finds that, given the other information that Plaintiff has provided in his Amended Complaint, he did not need to plead the exact location where he received the phone call to satisfy Rule 9(b)." (collecting cases)).

explain how the statement is fraudulent. *See Rombach*, 355 F.3d at 175. Accordingly, Volvo's Motion to Dismiss Orange Transportation's fraud claims is GRANTED.

## V.     New York's Consumer Protection Law

Volvo argues that Orange Transportation's claims under New York's consumer protection law, specifically N.Y. Gen. Bus. Law § 349, must be dismissed because Orange Transportation has failed to allege any conduct impacting a consumer within the meaning of the law. ECF No. 7-3 at 20–24. The Court agrees.

New York's law entitled "Consumer Protection from Deceptive Acts and Practices" is intended to apply to "consumers." *Cruz v. NYNEX Info. Res.*, 703 N.Y.S.2d 103, 104, 106 (App. Div. 2000). Specifically, it protects individuals or natural persons "who purchase[] goods, services or property primarily for 'personal, family or household purposes.'" *Id.* at 106 (collecting statutory authority). Although "[t]he statute's consumer orientation does not preclude its application to disputes between businesses per se, . . . it does severely limit it." *Id.* at 107. "The threshold requirement of consumer-oriented conduct is met [in a dispute between businesses] by a showing that the acts or practices have a broader impact on the consumer at large in that they are directed to consumers or potentially affect similarly situated consumers." *Id.* (quotation omitted). For instance, in *Cruz* the court held that advertisement space did not meet this threshold requirement because it was a commodity available only to businesses and the plaintiff failed "to show how the complained-of conduct might either directly or potentially affect consumers." *Id.*

Orange Transportation argues that the defects and warranties at issue were involved in all sales of Volvo trucks to other customers. ECF No. 15 at 9. Orange Transportation misses the point. Although Orange Transportation has plausibly alleged that there are other purchasers of the semi-trucks at issue, ECF No. 1 ¶ 114, it has not alleged, plausibly or otherwise, that those purchasers

are "consumers" within the meaning of New York consumer protection law. ECF No. 1. Orange Transportation fails to allege that the semi-trucks at issue were sold for personal, family, or household purposes. *Cruz*, 703 N.Y.S.2d at 106. Further, Orange Transportation fails "to show how the complained-of conduct might either directly or potentially affect consumers." *Id.* at 107.

Alternatively, Volvo argues that Orange Transportation's consumer protection law claims are barred by the three-year statute of limitations. ECF No. 7-3 at 20–22; *Bristol Vill., Inc. v. La.-Pac. Corp.*, 170 F. Supp. 3d 488, 497 (W.D.N.Y. 2016). As with its implied warranty claims, Orange Transportation only argues that the statute of limitations should be equitably tolled. ECF No. 15 at 10. For the reasons discussed above, equitable tolling is inapplicable and Orange Transportation's consumer protection claims are barred by the statute of limitations.

Accordingly, Volvo's Motion to Dismiss Orange Transportation's claims under New York's consumer protection law is GRANTED.

## VI.    Leave to Amend

Orange Transportation briefly requests that, if the Court dismisses its claims, it be granted leave to amend its Complaint to add additional allegations supporting its equitable tolling argument. ECF No. 15 at 10. Orange Transportation has also filed a "Notice of Intent to Amend Complaint" indicating that Orange Transportation would like to file an amended complaint addressing the standing issues previously identified by the Court and resolving any further deficiencies identified by the Court in this Decision and Order. ECF No. 20.

"Courts should freely give leave to amend a complaint when justice so requires." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212 (2d Cir. 2011) (citing Fed. R. Civ. P. 15(a)(2)) (quotation omitted). This is a "permissive standard" because of a "strong preference for resolving disputes on the merits." *Id.* at 212–13 (quotation omitted).

Orange Transportation, however, does not provide "the Court with any indication as to how leave to amend would cure the deficiencies in the Complaint" identified in this Decision and Order. *Oden*, 330 F. Supp. 3d at 903–04 (collecting authority). Further, neither document meets the procedural requirements of Local Rule 15(a) (requiring the plaintiff to attach the proposed amended pleading to its motion). *See Malcolm v. Rochester City Sch. Dist.*, 388 F. Supp. 3d 257, 265 (W.D.N.Y. 2019) ("Failing to attach a proposed amended complaint may warrant dismissal."); *Oden*, 330 F. Supp. 3d at 904 n.4. Accordingly, the Court DENIES Orange Transportation's request.

The Court, however, acknowledges that Orange Transportation's fraud claims present a close question and amendment may not be futile. Accordingly, Orange Transportation may file a properly supported motion to amend with respect to its fraud claims.

## CONCLUSION

Volvo's motion to dismiss Orange Transportation's Complaint, ECF No. 7, is GRANTED. With respect to its fraud claims, Orange Transportation may file a properly supported motion to amend no later than April 30, 2020. If such a motion is filed, Volvo's response is due by June 1, 2020, and Orange Transportation may file a reply within fifteen days after Volvo's response is filed. If no such motion is filed, Orange Transportation's fraud claims will be dismissed with prejudice. Orange Transportation's remaining claims are DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Dated: March 31, 2020
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court