UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ORANGE TRANSPORTATION SERVICES, INC., et al.,

                                        Plaintiffs,

                                                        Case # 19-CV-6289-FPG

v.
                                                        DECISION AND ORDER

VOLVO GROUP NORTH AMERICA, LLC,

                                        Defendant.

## INTRODUCTION

Plaintiff Orange Transportation Services, Inc. brought this action against Defendant Volvo Group North America, LLC.  ECF No. 1.  Currently before the Court are Volvo's objections to Magistrate Judge Mark W. Pedersen's Decision and Order granting Orange Transportation's second motion to amend the complaint, ECF No. 54, and Volvo's motion to dismiss the Second Amended Complaint ("SAC"), ECF No. 53.  Also pending before the Court is Volvo's motion to stay discovery.  ECF No. 67.  For the reasons that follow, Volvo's objections are SUSTAINED, Magistrate Judge Pedersen's Decision and Order is VACATED, and Volvo's motions to dismiss and for a stay are DENIED AS MOOT.  As a result of the Court's disposition of these motions, the First Amended Complaint, ECF No. 29, is now the operative pleading.

## BACKGROUND

### I.    Procedural History

In its initial complaint, Orange Transportation—a long-haul freight carrier—alleged that Volvo—a semi-truck manufacturer—fraudulently induced it and its sister company into purchasing semi-trucks that Volvo knew had engine defects.  Volvo filed a motion to dismiss, ECF No. 7, and the Court dismissed all of Orange Transportation's claims but provided it with an

opportunity to amend.  ECF Nos. 17, 21.  Orange Transportation moved to amend, ECF No. 22, and the Court ultimately permitted Orange Transportation to proceed only on its common law fraud claim with respect to the six trucks it purchased.  The Court concluded that it could not bring fraud claims on behalf of Dallas Logistics, Inc.—the sister company—for the trucks it purchased. ECF No. 28.  Accordingly, Orange Transportation filed its First Amended Complaint.  ECF No. 29.

In February 2021, the Court referred this case to Magistrate Judge Pedersen for all pretrial matters, excluding dispositive motions.  ECF No. 31.  Orange Transportation then moved to amend, this time to add Dallas Logistics as a plaintiff and to assert common law fraud claims with respect to the eleven trucks Dallas Logistics purchased.  ECF No. 39.

In July 2021, Magistrate Judge Pedersen granted Orange Transportation's motion to amend.  ECF No. 48.  Magistrate Judge Pedersen concluded that the Second Amended Complaint ("SAC") cured a pleading deficiency identified in the Court's previous orders: that Orange Transportation did not have standing to bring fraud claims with respect to the trucks it did not purchase.  *Id.* at 4.  Magistrate Judge Pedersen found that the SAC would not cause undue prejudice and that leave to amend was not sought in bad faith.  *Id.* at 5-6.  With respect to futility, Magistrate Judge Pedersen concluded that "Plaintiff meets the 'relation back' test of Federal Rule 15, and the Court has already ruled that the fraud claim related to the vehicles purchased by [the companies] withstands Volvo's motion to dismiss."  *Id.* at 6.

Orange Transportation filed the SAC, which is identical to the First Amended Complaint, except for adding a common law fraud claim on behalf of Dallas Logistics and some facts regarding that alleged fraud.  *See* ECF No. 39-2.

Thereafter, Volvo moved to dismiss the claims asserted by Dallas Logistics in the SAC. ECF No. 53.  Volvo also objected to Magistrate Judge Pedersen's Decision and Order granting Orange Transportation's motion to amend.  ECF No. 54.

In September 2021, Volvo moved to stay discovery pending resolution of the objections and the motion to dismiss.  ECF No. 60.  Magistrate Judge Pedersen denied the motion to stay discovery and ordered the parties to continue to conduct discovery.  ECF No. 62.  In November 2021, Volvo again moved to stay discovery on an expedited basis pending the resolution of the objections and motion to dismiss.  ECF No. 67.

## II.    SAC Allegations

Many of the relevant facts are set forth in detail in the Court's most recent order and the Court will not recount them here in detail.  *See* ECF No. 28.  Suffice it to say that the First Amended Complaint and SAC are similar in all respects except that the SAC adds Dallas Logistics as a plaintiff and includes allegations regarding its truck purchases.[1]

Plaintiffs allege that starting in 2014, Tony Kirik, who was an officer of both Orange Transportation and Dallas Logistics, sought to purchase a new fleet of trucks for both companies. ECF No. 39-2 ¶ 38.  During negotiations with Volvo to purchase these trucks, Volvo representatives made false and misleading representations to Kirik regarding engine malfunctions. *Id.* ¶ 47.  Based on these allegedly fraudulent representations, Kirik purchased six Volvo trucks on behalf of Orange Transportation, *id.* ¶ 31, and eleven Volvo trucks on behalf of Dallas Logistics, *id.* ¶ 32.  The Volvo trucks purchased by Dallas Logistics were identified as Units 4044, 4046,

---

[1] The Proposed SAC, submitted in track changes in support of the motion to amend, ECF No. 39-2, and the SAC, ECF No. 49, filed on the docket after Magistrate Judge Pedersen granted the motion to amend, are the same.  Because the Court resolves the objections to the motion to amend first and denies the motion to dismiss as moot, it will cite to the Proposed SAC.

4048, 4050, 4052, 4054, 4056, 4058, 4060, 4062, and 4064, and were delivered in March 2015. *Id.* ¶ 32.

Orange Transportation and Dallas Logistics "started experiencing problems with the trucks immediately." *Id.* ¶ 52.   Plaintiffs soon learned that "the 2015 engines experienced the same type of malfunctions that the 2007 engines experienced, and repeatedly broke down." ECF No. 39-2 ¶ 52.

However, in December 2016, Dallas Logistics transferred ownership of its eleven trucks to Orange Transportation. *Id.* ¶ 32.

In August 2017, nine months after Dallas Logistics transferred ownership, Orange Transportation paid $6,564.81 for repairs to Unit 4058. *Id.* ¶ 62.   The SAC also indicates that "OTSI" has "pictures for many of the repairs that clearly portray this failure mechanism," including for Units 4048 and 4058, but does not allege when those repairs were made. *Id.* ¶ 82.

Later that year, in November 2017, Kirik emphasized to Volvo representatives "that the high malfunction rate and Volvo's inability to properly repair the engines was a serious problem and provided a spreadsheet showing repair costs to Kirik's companies totaling over $228,000." *Id.* ¶ 70.   The SAC, however, does not indicate how much, if any, of those repairs were attributable to Dallas Logistics.   In fact, by November 2017, Dallas Logistics had not owned any of the trucks for almost one year.

Plaintiffs also allege that "[o]ut of 11 major repairs, Volvo provided coverage for one engine replacement for one of [Orange Transportation's] and [Dallas Logistics's] vehicles.   All other repairs were paid by Plaintiff with Volvo contributing 8% as goodwill policy.   Other than engine problems, 10 of 23 trucks had the transmission replaced." *Id.* ¶ 87.   Again, however, Plaintiffs do not indicate who owned the truck whose engine was replaced, which company paid

for the engine repairs, or which company's trucks had transmissions replaced.  Finally, Plaintiffs assert that Orange Transportation and Dallas Logistics sold 18 trucks in June 2018 to AmeriQuest at a loss of $402,872.94.  *Id.* ¶ 89.  Plaintiffs allege that the defects caused a loss of $25,000 per vehicle.  *Id.* ¶ 92.

## LEGAL STANDARD

On appeal of a magistrate judge's order regarding non-dispositive pretrial matters—like the order here granting a motion to amend[2]—the district court must "modify or set aside any part of the order that is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a); 28 U.S.C. 636(b)(1)(A).  "An order is clearly erroneous when upon review of the evidence, the district court is left with the definite and firm conviction that a mistake has been committed."  *Best Payphones, Inc. v. Dobrin*, 409 F. Supp. 3d 130, 133-34 (E.D.N.Y. 2018) (quoting another source).  "Further, an order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure."  *Id.*  Therefore, the Court reviews Magistrate Judge Pedersen's order granting Orange Transportation's motion to amend for clear error.

## DISCUSSION

The Court concludes that Magistrate Judge Pedersen's Decision and Order granting Orange Transportation's motion to amend was clearly erroneous.

To be sure, under Federal Rule of Civil Procedure ("Rule") 15(a)(2), "courts 'should freely give leave' to amend a complaint 'when justice so requires.'"  *Williams v. Citigroup Inc.*, 659 F.3d

---

[2] "The Second Circuit has referred to a motion to amend a complaint as a non-dispositive matter, but it has not explicitly decided the issue."  *Beh v. Cmty. Care Companions, Inc.*, No. 19-CV-1417-JLS-HBS, 2021 WL 3914320, at *1-2 (W.D.N.Y. June 23, 2021).  "[D]istrict courts in this circuit have suggested that a magistrate judge's *denial* of a motion to amend a complaint should be treated as dispositive, while a *grant* of the same motion should be treated as non-dispositive."  *Tyree v. Zenk*, No. 05-cv-2998, 2009 WL 1456554, at *3 (E.D.N.Y. May 22, 2009) (emphasis in original); *see also Zink v. First Niagara Bank, N.A.*, No. 13–CV–1076, 2015 WL 423221, at *1 n.2 (W.D.N.Y. Feb. 2, 2015).

208, 212 (2d Cir. 2011) (quoting Fed. R. Civ. P. 15(a)(2)).  This is a "permissive standard" because of a "strong preference for resolving disputes on the merits."  *Id.* at 212-13 (internal quotation marks omitted).  "[I]t is within the sound discretion of the district court to grant or deny leave to amend."  *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (internal quotation marks omitted).  Leave to amend may be denied for good reason, such as undue delay, bad faith, dilatory motive, undue prejudice, or futility of the amendment.  *Id.*; *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).  The party opposing a motion for leave to amend bears "the burden of establishing that leave to amend would be prejudicial or futile."  *Blaskiewicz v. Cnty. of Suffolk*, 29 F. Supp. 2d 134, 137 (E.D.N.Y. 1998).

Volvo met that burden before Magistrate Judge Pedersen.  Although Magistrate Judge Pedersen addressed delay, bad faith, and prejudice in his Decision, he only addressed one of Volvo's futility arguments—relation back—but did not address the others.  Perhaps this is so because Magistrate Judge Pedersen read the Court's previous rulings too broadly.  He recounted that "the Court has already ruled that the fraud claim related to the vehicles purchased by Kirik for his companies withstands Volvo's motion to dismiss."  ECF No. 48 at 6.  That is true with respect to the vehicles purchased by Orange Transportation, but not necessarily with respect to the vehicles purchased by Dallas Logistics.

Under New York law, a fraud claim has five elements: "(1) a material misrepresentation or omission of fact; (2) made by defendant with knowledge of its falsity; (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff."  *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006).  If a plaintiff "seeks to show fraud by omission, it must prove additionally that the [defendant] had a duty to disclose the concealed fact."  *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 181 (2d Cir. 2007).  New

York law recognizes such a duty "where the party to be charged has superior knowledge or means of knowledge, such that the transaction without disclosure is rendered inherently unfair." *Miele v. Am. Tobacco Co.*, 770 N.Y.S.2d 386, 391 (2d Dep't 2003); *see also Abrams v. Gen. Motors Corp.*, 466 N.Y.S.2d 124, 127 (Sup. Ct. 1983) ("If one party has superior knowledge or has a means of knowledge not available to both parties, then he is under a legal obligation to speak and silence would constitute fraud.").

Even assuming Dallas Logistics could establish the first four elements of fraud, there are no plausible allegations in the SAC that Dallas Logistics was *damaged*. Nor are there any allegations that Dallas Logistics assigned any claims to Orange Transportation. *See* ECF No. 23 at 11-14. In other words, because the SAC does not plausibly allege facts establishing that element of fraud with respect to Dallas Transportation, amendment would be futile.

To be sure, "Rule 9(b) does not require that claimants plead injury with particularity, even in fraud claims." *Tyman v. Pfizer, Inc.*, No. 16CV06941LTSBCM, 2017 WL 6988936, at *6 (S.D.N.Y. Dec. 27, 2017), *report and recommendation adopted*, 2018 WL 481890 (Jan. 18, 2018). Courts routinely hold that plaintiffs need not plead exactly how they were damaged or the measure by which damages should be calculated. *See United States v. Strock*, No. 15-CV-0887-FPG, 2021 WL 1110411, at *4 (W.D.N.Y. Mar. 23, 2021) (citing other cases). But the issue here is not that Dallas Logistics failed to allege precisely how it was injured, but rather Dallas Logistics has not alleged that it was injured at all.

Plaintiffs attempt to smush the allegations together and blur the lines regarding which company suffered which damages, a problem compounded by the procedural history of this case. On the first page of the SAC, Plaintiffs define the singular "Plaintiff" as both Orange Transportation and Dallas Logistics, but then continue on to make specific factual allegations only

as to Orange Transportation.  Indeed, the SAC includes the same factual allegations regarding damages as those included in the First Amended Complaint, where they applied only to Orange Transportation.  It seems contradictory and implausible for Plaintiffs to now allege that they both incurred the same damages that Orange Transportation previously alleged that only *it* had incurred. *Cf. United States v. McKeon*, 738 F.2d 26 ("A party [] cannot advance one version of the facts in its pleadings, conclude that its interests would be better served by a different version, and amend its pleadings to incorporate that version, safe in the belief that the trier of fact will never learn of the change in stories.").  Elsewhere in the SAC, by using terms such as "OTSI and DLI" to refer to both companies in the collective, Plaintiffs seek to further obfuscate whether each plaintiff suffered a distinct injury.  Plaintiffs are presumably in possession of the information necessary to allow them to differentiate which entity was damaged and how, yet they have not made any effort to plead those facts.  Given all of this, Dallas Logistics simply has not plausibly alleged that it was damaged by Volvo's alleged fraud.  *Abraham v. Leigh*, No. 17-CV-5429 (KPF), 2018 WL 3639930, at *4 (S.D.N.Y. June 27, 2018) (dismissing amended complaint where its allegations contradicted allegations from the original complaint); *In re Old CarCo LLC*, 435 B.R. 169, 195 (Bankr. S.D.N.Y. 2010) (dismissing fraud claims based on implausibility of allegations).

The SAC makes clear that Orange Transportation incurred damages for the alleged malfunctioning engines—both those that it purchased and those it acquired from Dallas Logistics in 2016.  But the SAC is notable for what it does not include—any reference to damages incurred by Dallas Logistics for fraud directed at Dallas Logistics while it owned the trucks.  Rather, all of allegations pertaining to damages on trucks Dallas Logistics purchased occur *after* Dallas Logistics transferred ownership of the eleven trucks.  *See, e.g.*, ECF No. 39-2 ¶¶ 52, 62, 70, 82.  This makes it even less plausible that Dallas Logistics was actually injured by Volvo's alleged conduct.

Dallas Logistics has not alleged that *it* paid for any repairs or that *it* sold its trucks to Orange Transportation at a loss.  Nor does it even appear that Dallas Logistics could.  Of the trucks originally purchased by Dallas Logistics, the SAC only references two trucks that required repairs—and each of those trucks was repaired *after* Dallas Logistics transferred ownership of the trucks to Orange Transportation.  *Id.*  In a rare instance of differentiating between the parties, the SAC explicitly indicates that it was Orange Transportation—not Dallas Logistics—that had photographs of the required repairs.  *Id.* ¶ 82 ("OTSI was provided pictures for many of the repairs that clearly portray this failure mechanism.").

Dallas Logistics attempts to cure these pleading deficiencies by alleging that "Plaintiff" "lost income" and "experienced excessive down time and resulting lost revenue."  ECF No. 39-2 ¶¶ 1, 26.  But again, the only lost income, lost revenue, or excessive downtime appears from the face of the SAC to be attributable to Orange Transportation, not Dallas Logistics.

As Magistrate Judge Pedersen and Orange Transportation rightly recognized, it may be "unjust to allow Volvo to escape potential liability related to all of the vehicles Kirik was defrauded into purchasing for both companies."  ECF No. 48 at 6; ECF No. 58 at 2-6.  But so too would it be unjust to allow Dallas Logistics's claims to proceed against Volvo when it never suffered any damage.  Plaintiffs must allege that the party defrauded was the party damaged; Dallas Logistics has not done so in the SAC.

Accordingly, the SAC does not plausibly allege damages, and therefore the amendment was futile and must be denied.

## CONCLUSION

For the foregoing reasons, Volvo's objections to Magistrate Judge Pedersen's Order granting Orange Transportation's motion for leave to amend, ECF No. 54, are SUSTAINED.

Magistrate Judge Pedersen's Decision and Order, ECF No. 48, is VACATED.  The operative pleading is now the First Amended Complaint, ECF No. 49, and Dallas Logistics shall be terminated as a plaintiff.  Volvo's motion to dismiss, ECF No. 53, and Volvo's motion to stay discovery, ECF No. 67, are DENIED AS MOOT.

      IT IS SO ORDERED.

Dated: December 22, 2021
      Rochester, New York

 

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York